## Whittier *against* Gould.

The written testimony of a witness as to the execution of a paper, that he "knows it to be the handwriting of the party," is sufficient without the testimony of his means of knowledge—that he had seen him write, if the opposite party, upon a cross-examination, declined to elicit the information.

The misnomer of one of two defendants, when sued as a firm, as to his Christian name, if material at all, must be taken advantage of by plea in abatement.

The dissolution of a firm, and an arrangement between them by which the debts were to be paid by one of them, does not affect the liability of either to third persons who knew of the arrangement.

ERROR to the common pleas of *Erie* county.

This suit was brought by West W. Gould against Asa Whittier and Daniel S. Balsh, lately doing business under the name of Whittier & Balsh. The writ was served upon Whittier alone, who pleaded *non assumpsit* and payment with leave, &c.

In a deposition taken upon a commission to the state of New Hampshire, a witness testified: "I am acquainted with *Dan* S. Balsh and Asa Whittier, but do not know any such man as *Daniel* S. Balsh. I am acquainted with the handwriting of Whittier & Balsh, and was acquainted with it during their partnership; the signature to the note is in the handwriting of Dan S. Balsh."

The plaintiff then offered the note in evidence, as follows:

"280 dollars.    Canaan, October 7, 1834.—For value received of W. W. Gould, we promise to pay to his order two hundred and eighty dollars on demand, with interest annually.

"Whittier & Balsh."

The offer was objected to, first, because the proof was of the execution of a note by Dan S. Balsh, and the suit was against Daniel S. Balsh; secondly, that the witness did not testify that he had ever seen the defendants write.

The court overruled the objections and sealed a bill of exceptions.

The note was given in evidence. The same witness testified that Whittier & Balsh had dissolved partnership in 1835, and by an agreement between them, Balsh was to pay all the debts; that the creditors generally knew of this arrangement; and that Balsh had since failed.

Upon this testimony the defendant requested the court to charge.

the jury that the delay by the plaintiff, knowing that arrangement, until Balsh's insolvency, ought to bar his recovery in this suit against Whittier.

But the court below directed the jury that the evidence did not amount to a defence.　Verdict for plaintiff.

*Galbreath*, for plaintiff in error.
*Walker*, for defendant in error.

The opinion of the Court was delivered by

KENNEDY, J.—The original writ of summons in this case was against Asa Whittier and Daniel S. Balsh, lately doing business under the name and title of Whittier & Balsh, thus showing clearly that the persons, who lately composed the firm or partnership, that did business under the name of "Whittier & Balsh," were intended to be sued and impleaded by the plaintiff, whether their names individually were Asa Whittier and *Daniel* S. Balsh, or Asa Whittier and *Dan* S. Balsh.　The cause of action also set out in the declaration, is a note dated the 7th of October 1834, drawn by " Whittier & Balsh," thus using the name of the firm, for the payment of 280 dollars on demand, with interest, to W. W. Gould, the plaintiff.　The note, as described in the declaration, agrees with the note offered and given in evidence on the trial, by the plaintiff. The counsel of the defendant below, however, objected to the note's being read in evidence to the jury; first, because the witnesses residing in the state of New Hampshire, whose depositions were taken by the plaintiff, under a commission, to prove the execution of the note and the persons who composed the firm known by the name of " Whittier & Balsh," testified that they were and had been acquainted with the handwriting of Asa Whittier and Dan S. Balsh, during the time they were engaged in doing mercantile business as partners, under the name of "Whittier & Balsh," which commenced first in 1833, and terminated in March 1835; and that the signature of the drawers to the note was in the handwriting of *Dan* S. Balsh, without stating how or by what means they had acquired their knowledge of the handwriting of the said Balsh.　And secondly, because, from the testimony of the witnesses, it appeared that Asa Whittier and *Dan* S. Balsh, and not *Daniel* S. Balsh, composed the firm known by the name of " Whittier & Balsh."　The court below, however, overruled the objection and admitted the note to be read in evidence to the jury, to which the counsel for the defendant excepted, and have assigned the admission of this evidence here, as the first error.

As to the first objection to the admission of the evidence, we consider it a sufficient answer to it, that the defendant saw the interrogatories of the plaintiff filed with the clerk, before the commission was taken out, which were to be annexed to it, that they might be answered by the witnesses; and he, at·the same time,

[Whittier v. Gould.]

filed cross-interrogatories on his part.   He saw then, also, that the plaintiff, in his interrogatories, had omitted to ask or to request the witnesses, if they knew the handwriting of Whittier & Balsh, to state how it was they had acquired their knowledge thereof.   Seeing this, he might very naturally have concluded that the witnesses might not think it necessary that they, in their answers, should state by what means it was that they had become acquainted with the handwriting of the drawers of the note, which accompanied the commission.   And hence, if he considered it at all important to have, from the witnesses, the means of the knowledge which they professed to have, he might have elicited it by putting a cross-interrogatory, suitably framed for that purpose, to them himself. Having, however, omitted to do this, it is fair to conclude that he was willing to credit what they might testify to, without their stating by what means they had acquired their knowledge in respect to it.   See Moody *v.* Rowell, 17 *Pick.* 490.

Then as to the second ground on which the admission of the evidence was opposed.   It is perfectly evident that Whittier knew that Dan S. Balsh, who was proved to have been his partner and to have drawn the note, was the person against whom the summons, in connection with himself, was sued out, or intended to be.   And in Boughton *v.* Frere, 3 *Camp.* 29, Mr Justice Baily, where the plaintiff having declared in the name of *Edward* Boughton, upon a bill of exchange drawn by himself, payable to his own order and accepted by the defendant, and it appearing that the plaintiff's real name was *Edmund,* and that he had drawn the bill in that name, refused to nonsuit the plaintiff, it being shown that the defendant knew that the suit was brought by *Edmund* Boughton and that the bill was drawn by him; and the plaintiff obtained a verdict. Now this was certainly a much stronger case against the plaintiff than the one under consideration, because there can be no excuse for a plaintiff mistaking his own name, though he may readily do so as to the name of the defendant; and especially, as in this instance, seeing that in this state *Dan* is generally used as an abbreviation for the name of *Daniel,* and the Hebrew name *Dan* almost, if not altogether unknown.   I certainly have never known nor heard of a man in this state of that name.   Besides, it is the duty of the defendant, if he be sued by a wrong name, to advise the plaintiff of it at the earliest moment, by pleading it in abatement, so that the plaintiff may correct his mistake without being put to useless costs or delay; or if he do not, he will be taken as having waived all exception to it.   It is clear that Balsh himself could not have taken advantage of the misnomer, on a trial of the general issue; and there does not appear to be any good reason why Whittier should be permitted to do it, since he must have known of it from the first commencement of the action.   It may also be remarked, that making proof of the *Christian* names of partners in trade, when sued as a firm, in which they are declared against by

[Whittier v. Gould.]   .

giving to each a Christian name, seems not to be material or required in order to enable the plaintiff to recover.   For in Hodenpyl *v.*Vingerhoed and another, before Abbot, J., 3d of July 1818, Guildhall, in assumpsit on a promissory note, dated at Rotterdam and drawn in Dutch, for the payment of 900 guilders to the plaintiff, and subscribed by the firm, " Vingerhoed & Christian," the declaration stated the several Christian names of each defendant; a witness swore that he knew the firm of Vingerhoed & Christian, and that there were two persons of those surnames in the firm, but that he did not know their Christian names; and that in a conversation with Vingerhoed, he admitted that the note was subscribed by him in the name of the firm; this was held sufficient to establish the action against both defendants.   *Phil. Ev.* 3d ed. 75; *Chitty on Bills* (New York, 1830) 381, in notes.   Upon the whole we are, therefore, inclined to think that the court below were right in admitting the note to be read in evidence.

There is a second error assigned, which is an exception taken by the counsel for the defendant below, who is the plaintiff in error, to the answers given by the court to a point submitted by him for their instruction upon it to the jury.   In this point the court were requested to charge the jury, that if they believed, from the testimony, that the plaintiff knew of the arrangement that Balsh was to pay the debts, to whom the partnership effects were given for that purpose, and they were sufficient to pay the debt in question, and plaintiff lay by until Balsh failed, they might presume that he took the individual responsibility of Balsh; and it would be a fraud upon Whittier to resort, at this late day, to him, and should, therefore, operate as a discharge of him.   We are clearly of opinion that there is not even the shadow of a pretence for saying that the plaintiff had, either expressly or impliedly, agreed to relieve Whittier and look to Balsh alone for the payment of the note; and it can not be pretended that Whittier & Balsh could effect this by any agreement which they could make between themselves, without the assent of the plaintiff.   It is idle, if not perfectly ridiculous, to say that the plaintiff committed a fraud upon Whittier by not bringing suit earlier than he did.   It would be much more correct to say that Whittier committed a fraud upon the plaintiff, in not paying the note when first demanded, if he were able; and again, in withholding payment from him since that time, because at all times since the note was given, the obligation of Whittier to the plaintiff to pay him the note, was and has been as strong fully as that of Balsh; and neither Whittier nor Balsh ought to have delayed payment, so as to put the plaintiff to the necessity of bringing a suit.

Judgment affirmed.