GEORGE H. SMITH vs. JOHN WALTON, USE OF JESSE WAL-
TON.—*June*, 1849.

A witness who has seen a party write, although but once, and who has in this mode acquired a knowledge of the general character of his handwriting, is competent to testify with respect to its genuineness.

A witness who has seen a party write, or who has corresponded with him, is qualified to speak with respect to the genuineness of his signature.

The impression made upon the mind of a witness who has seen a person write his name but once, may be exceedingly faint and imperfect, but it is, nevertheless, testimony, provided the witness can declare, that from his knowledge of the character of the handwriting thus acquired, he believes it to be genuine.

The question, so far as it relates to the competency of the witness, must depend not on the quantity of his information, but the source from which it is derived.

A witness said he believed the signature of the surname to be genuine, but could not say so as to the christian name, and, therefore, could not prove the whole signature. HELD: that this evidence, standing by itself, would be admissible; but its admissibility is placed beyond controversy when offered in connection with the testimony of another witness, who proved, in his opinion, the whole signature genuine.

Where both, by the nature of the questions on cross-examination, and the character of the prayer offered to the court below, by the defendant, it was conceded that the witness had the knowledge capacitating him to testify in regard to the handwriting, his testimony is not open, in this court, to the objection that the plaintiff should have established such knowledge as a preliminary fact, before asking the witness to testify, from such knowledge, to the genuineness of the signature.

It is perfectly legitimate, for the purpose of refreshing his recollection of the handwriting, to hand to the witness a paper which he saw the defendant sign, and then for the witness to state, as the result of a comparison between that signature and the impression formed in his mind of the general character of the defendant's writing, derived from antecedent knowledge, that he believed the disputed signature genuine.

But the opinion of a witness who founds his belief upon a mere naked comparison of two signatures, one disputed, and the other known by him to be genuine, is clearly inadmissible to prove the genuineness of the disputed signature.

It is a rule of law, now too firmly established to be disturbed, that signatures cannot be proved by a direct comparison of hands; by which is meant the collation of two papers in juxta-position for the purpose of ascertaining, by inspection, if they were written by the same person.

The sufficiency, in fact, of testimony to sustain the issue, is exclusively a question for the jury.

Appeal from *Saint Mary's* county court.

This was an action of debt instituted by the appellee, *John Walton*, against the appellant, on the 29th of June, 1847, upon a single bill in favor of said *Walton*, for $539.30, purporting to be signed and sealed by *George H. Smith*, the appellant. The defendant pleaded *non est factum*, upon which issue was joined.

In the course of the trial, four exceptions were taken by the defendant. The 1st is fully stated in the opinion of the court. In the 2nd, the defendant, upon the evidence detailed in the 1st, prayed the court to instruct the jury, that if they find, from the evidence, that *George W. Morgan* only saw the defendant write once, and that nearly five years ago, and that his recollection of the said writing was imperfect, and only revived by examination of the papers lately shown him, that though the evidence is admissible, it is a rule of law that such evidence is not of conclusive character, but belongs to that class of testimony which is regarded as faint, and an unsafe basis of action. Which instruction the court (KEY and CRAIN, A. J.,) refused to give. Which refusal constitutes the 2nd exception.

3rd. In addition to the evidence in the foregoing bills of exception, the plaintiff offered to prove, by *James B. Kirk*, that from his knowledge of the general character of the handwriting of the defendant, he believes the word "*Smith*," signed to said single bill, to be genuine. Upon cross-examination, witness stated, that from the same knowledge of the general character of the handwriting of the defendant, he could not say that he believed the words, also there signed, "*Geo. H.*," to be genuine, and upon being asked, by defendant's counsel, whether he could say to the jury that, from his knowledge of the general character of the handwriting of said *George H. Smith*, he believed the signature to the single bill to be genuine, he answered, "he could not." Whereupon, the defendant prayed the court to reject the testimony, as legally insufficient to sup-

port the issues in this case; but the court overruled the objection, and permitted the same to go to the jury, to be weighed by them, to which action of the court the defendant excepted.

The 4th and last exception is fully stated in the opinion. The verdict and judgment being for the plaintiff, the defendant appealed to this court.

The cause was argued before DORSEY, C. J., MARTIN and FRICK, J.

PRATT, for the appellant, said he would not trouble the court with the consideration of the question raised by the 1st exception, because it is more fully presented by the 4th exception; nor would he argue the question involved in the 2nd exception, as, in his judgment, the *legal sufficiency* of the proof to maintain the issue, is a question for the court, but the *sufficiency in fact* of such testimony, is exclusively a question for the jury. On the 3rd exception, he contended: 1st. That it was incumbent on the plaintiff to show the means by which his witness acquired a knowledge of the handwriting of the defendant, before he should have been permitted, from such alleged knowledge, to testify to the genuineness of the defendant's signature to the single bill in controversy. 2nd. That the testimony offered in this exception "was of so light and inconclusive a nature, as to be wholly insufficient to be made the basis of a verdict," and that the court below were the exclusive judges of the "measure and *quantity of proof legally sufficient* to prove the issue," and should, when called on by the defendant, have excluded this proof from the jury. Upon the 4th exception, he argued that the defendant having plead *non est factum,* it was incumbent on the plaintiff to prove the signing, sealing and delivery of the bond, and that it was incompetent for him to prove the signature of the defendant by placing in the hands of the witness a paper shown to be in the handwriting of the *defendant,* and then placing in his hands the single bill in dispute, and "asking the witness to *compare* the handwriting of each paper by placing them *side by side,*

and then to say whether, *from such comparison,* he believed the signature to the single bill to be in the handwriting of defendant.''

McMahon, for the appellee, in reply to the 1st point under the 3rd exception, insisted that the objection, as made below, presents no such question; that it was waived, or the knowledge capacitating the witness to testify as to the handwriting, was impliedly conceded by the defendant's examination of the witness, and that he cannot, therefore, make the objection here; that it was shown by the subsequent proof stated in the 4th exception, that witness had seen defendant write, and if there were anything in the objection, it is no cause for reversal under such circumstances. In reply to the 2nd point under this exception, he maintained that the proof that the signature of the *surname* was genuine, did legally tend to prove the matter in issue, and was, therefore, properly admitted. That if it were the sole evidence in the case, it would have been admissible, and is clearly admissible when, as here, it is but part of the proof offered, and after evidence going to show the genuineness of the whole signature. Under the 4th exception, he contended, in reply to the appellant's point: that the draft which the witness saw the defendant sign, was properly exhibited to him for the purpose of refreshing his memory, and thereby enabling him, with the aid derived from the comparison, to express his belief as to the genuineness of the single bill in suit; that the evidence, after the comparison being given by a witness who had seen the defendant write, and had a knowledge of the general character of the defendant's handwriting, was not necessarily, as the evidence is stated, evidence of handwriting founded on the naked comparison alone, and exclusive of all knowledge of the witness; that being made by a witness having such knowledge, it is not a statement that the witness gained his knowledge of the writing solely from the comparison, and testified exclusively from that knowledge, and is consistent with the exercise of his previous general knowledge acting upon that comparison; and that the statement is

also consistent with the idea that the witness did not make the comparison to gain a knowledge of the handwriting by similarity of writing, and that the comparison being directed to other matters, such as a supposed difference in the manner of signing the christian name, which was removed by the exhibition of the draft signed in his presence, he was enabled thus to testify from his knowledge of the handwriting; that the witness, as one having a knowledge of the general character of the defendant's handwriting, and having before him the draft which *he saw* the defendant sign, could properly compare the two signatures, and was competent to testify, after such comparison, as to the similarity between the two signatures, and to express his belief founded on that similarity.

MARTIN, J., delivered the opinion of this court.

This was an action of debt instituted in *Saint Mary's* county court, by the appellee against the appellant, upon a single bill, to which the appellant pleaded *non est factum.*

It appears from the record, that at the trial of the issue joined upon this plea, the plaintiff offered to prove, by *George W. Morgan,* that in 1843, he had witnessed the signature of the defendant to a receipt which he had seen him sign; that the signature to that receipt very much resembled the signature to the cause of action, and that from that resemblance, and his knowledge of the character of the handwriting of the defendant, derived from that signature to said receipt, he believed the signature to the cause of action to be the signature of the defendant. Upon cross-examination, the witness further proved that he had never seen the defendant write his signature, except to that receipt; that he had no recollection of the character of the signature to that receipt, except from a subsequent examination of it in October, and that about one week after said examination of the receipt, he saw the single bill in dispute, and from his recollection of the signature to the receipt, he believed the signature to the single bill to be genuine; that he had also since compared the signatures to the receipts and single bill, by placing them side by side, and that he is still more

11      v.8

thoroughly convinced that the signature to the single bill is genuine. He further proved, that the said receipt has been in the possession of the plaintiff, and that he has never seen it, except in October, and at the present term of the court.

The introduction of this testimony, to prove the signature of the defendant to the cause of action in dispute, was resisted by his counsel. The objection was overruled, and the testimony permitted to go to the jury; and whether there was error in this opinion of the court below, is the question presented for our consideration by the *first* exception.

We think the decision of the court below, upon the point raised by this exception, was correct. It is true that the witness who was called to prove that the signature to the single bill was defendant's handwriting, had seen him write only on one occasion. But since the case of *Garrells vs. Alexander*, decided by *Lord Kenyon*, in 1801, 4 *Esp. Rep.*, 37, and recognised in the King's bench in 1836, in the case of *Doe vs. Suckermore*, 5 *Adolp. and Ellis*, 703, it has been regarded as an established rule of evidence, that a witness who has seen a party write, although but once, and has in this mode acquired a knowledge of the general character of his handwriting, is competent to testify with respect to its genuineness. The impression made upon the mind of a witness who has seen the defendant write his name only in a single instance, may be exceedingly faint and imperfect, but it is, nevertheless, testimony, provided the witness can declare, as he has done in the present case, that from his knowledge of the character of the defendant's handwriting, thus acquired, he believes it to be genuine. A witness who has seen a party write, or who has corresponded with him, is qualified to speak with respect to the genuineness of his signature. The question, so far as it relates to the competency of the witness, must depend, not upon the quantity of his information, but the source from whence it is derived. This evidence, like all evidence founded on probability, varies in every conceivable degree, from the highest to the lowest order of presumptive proof. It is, therefore, a proper subject for the consideration of a jury, who must determine

what influence and weight is to be given, under all the circumstances of the case, to the opinion of a witness who places his belief upon a single instance.

It was the observation of a learned judge, who delivered his opinion in the case of *Doe vs. Suckermore*, already adverted to, "that proof of handwriting, from the highest degree of certainty, carrying with it perfect assurance and conviction, to the lowest degree of probability, may be and is constantly submitted to the jury. From continued and habitual inspection or correspondence, or both, carried on till the trial itself, down to a single instance, or knowledge twenty years old, may be received." He alluded, he said, to the case of *Garrells vs. Alexander*, 4 *Esp. Rep.*, 37, where the execution of a bail bond was held by *Lord Kenyon*, to furnish means of knowledge. That the authority of that case was, indeed, questioned by *Lord Eldon*, upon another point, because the witness could not go so far as to express any belief, but as to the competency of a witness founding himself upon a single instance, we have the prevailing and important testimony of *Lord Eldon*, in *Eagleton vs. Kingston*, 8 *Ves.*, 473.

This rule of evidence was acknowledged by *Lord Ellenborough*, in *Powell vs. Ford*, 2 *Stark Cases*, 164. The witness in that case was rejected as incompetent, solely upon the ground that he had seen the party, whose signature was in dispute, write only his surname, but not his christian name. A distinction properly repudiated by *Chief Justice Abbott*, in *Lewis vs. Sapio*, 1 *Moody and Malkin*, 39. After proof that the surname was in the handwriting of the party, the jury might fairly conclude, if they believed it, that the whole signature was genuine. It would, indeed, be an extravagant presumption to infer that some counterfeit hand had written the christian name.

The court were correct, we think, in rejecting the prayer presented by the defendant in the *third* exception. We understand the witness, *J. B. Kirk*, introduced by the plaintiff, for the purpose of proving that the defendant's signature to the single bill was written by him, as stating that although from

his knowledge of the general character of the defendant's hand-writing he believed the signature of the surname to be genuine, he could not say so as to the christian name, and could not, therefore, prove the whole signature; and assuming this to be the true construction of his testimony, it would be admissible, if standing alone, as conducing to establish the matter in contestation upon the authority of the case of *Lewis vs. Sapio*, decided at *Nisi Prius*, by *Chief Justice Abbott*, in 1827, 1 *Moody and M.*, 39, to which we have already referred. And its admissibility must be considered as placed beyond all controversy, when it is recollected that this proof was offered not as the sole evidence in the cause, but in connection with the testimony of *George W. Morgan*, who proved, that, in his opinion, the whole signature was genuine.

The counsel for the appellant has also contended, that this testimony was improperly received, because it was incumbent on the plaintiff to have established, as a preliminary fact, that his witness had acquired a knowledge of the handwriting of the defendant, by having seen him write, or in some other recognised and legitimate mode, before he was permitted to testify, from such knowledge, to the genuineness of the signature. But we think that the testimony is not now open to this objection. · No such question was raised at the trial below, when the court was asked to reject the evidence "*as legally insufficient to support the issues in the cause.*" No attempt was made by the defendant, in his cross-examination of this witness, to explore the sources of his *information*, with respect to the handwriting in reference to which he was called upon to testify; and that the witness possessed that kind of knowledge which authorised him to speak of the genuineness of the defendant's signature, so far as his surname was concerned, is to be considered as a fact, conceded both by the nature of the questions propounded to him, on cross-examination, and by the character of the prayer addressed to the court, for their instruction to the jury. . *Whittier vs. Gould*, 8 *Watts*, 485.

There was error, we think, in the ruling of the court upon the point of evidence raised for their decision in the *fourth* ex-

ception. It appears from this exception, that the plaintiff exhibited to *J. B. Kirk*, the witness before produced by him, for the purpose of refreshing his memory, a draft purporting to be drawn by the defendant, in favor of the witness, dated the 20th of March, 1844, and which the witness proved was signed by the defendant, in his presence. This course of examination was perfectly legitimate, and if the witness, after having thus re-touched and strengthened his recollection of the defendant's handwriting, by inspecting the draft, had stated that he believed the disputed signature to be genuine, as the result of a comparison between that signature and the impression he had formed in his mind as to the general character of the defendant's writing, derived from antecedent knowledge, no legal exception could have been taken to the testimony.

But this is not the character of the evidence resisted by the appellant, and received by the court. We are informed, by the bill of exception, that after the witness had inspected the draft, the counsel for the plaintiff handed to him the cause of action upon which the suit was instituted, and asked him to compare the two signatures, which the witness did; that the counsel then asked him whether, from comparing the two signatures, he did not believe the signature to the single bill to be genuine? To which the witness answered, *that from comparing the two signatures*, he believed the signature to the single bill to be genuine. And it is perfectly manifest, looking alone to the facts disclosed by this exception, that the opinion expressed by the witness, with respect to the genuineness of the signature to the cause of action, was not derived in any degree from his antecedent knowledge of the defendant's autograph, but was exclusively founded upon the supposed similarity between the single bill in contest, and the draft of the 20th of March, 1844; the two papers being placed, at that time, before him in juxta-position, that he might compare them in order to ascertain, from inspection, whether both were written by the same person. This we consider to be the true construction of the evidence contained in the fourth exception, and assuming this construction to be correct, the testimony was clearly inad-

missible as an attempt to prove the genuineness of the disputed signature, by the opinion of a witness who founded his belief upon a mere naked comparison of the two papers submitted for his examination. It appears from the evidence, as set forth in the exception, that the witness, in answer to a question proposed to him by the counsel of the plaintiff, stated, that from comparing the two signatures, he believed the signature to the single bill to be genuine; and although the witness had some previous acquaintance with the general character of the defendant's writing, yet as the belief he expressed with respect to the genuineness of the signature to the single bill, was not derived from that antecedent knowledge, but was founded upon a supposed similarity between the two signatures before him, he stood precisely in the predicament of a witness who, without ever having seen a party write, is required to testify to the authenticity of his signature by a mere comparison of hands. That evidence of this description is not admissible for the purpose of proving handwriting, is a rule of law now too firmly established to be disturbed. Much has been written and said to show that comparison of hands is, as a mode of proof, better calculated to elicit truth, than the belief of a witness, founded, as it necessarily is, upon a comparison of the controverted signature with some image or impression which he has received into his mind, from having observed a party write more or less frequently. Upon this ground, testimony of this character has been admitted as competent to establish handwriting by the adjudications of some of the *American* courts. This is in conflict with the doctrine of the common law, as enunciated in *Westminister* hall. We consider it as the settled rule of the *English* law, which in this respect we approve and adopt, that with the exception of ancient documents, an exception standing upon the necessity of the case, signatures cannot be proved by a direct comparison of hands. By which it is meant the collation of two papers in juxta-position, for the purpose of ascertaining, by inspection, if they were written by the same person.

In the case of *Doe vs. Suckermore,* it was remarked, by

*Mr. Justice Coleridge:* "That our law has not, during a long course of years, permitted handwriting to be proved by the immediate comparison, by a witness, of the paper in dispute with some other specimen proved to have been written by the supposed writer of the first. He said it was familiar to lawyers that many attempts have been made to introduce this mode of proof according to the practice of the civil and ecclesiastical laws, but that after some uncertainty of decision, the attempts have failed." The court were clearly right in rejecting the prayer offered by the defendant in the *second* exception, and that exception has been properly abandoned. We, therefore, affirm the opinions of the court below, as expressed in the first, second and third exceptions, and reverse the opinion expressed in the fourth exception.

JUDGMENT REVERSED, AND<br>PROCEDENDO AWARDED.