## A. F. SHAPLEIGH HARDWARE COMPANY v. WELLS & CHESTNUTT.

### Decided October 29, 1896.

Principal and Surety—Agreement Between Principals.

Two or more principal debtors cannot, by agreement among themselves without consent of the creditor, so change the character of the liability of one of them to such creditor from principal to surety as to entitle him to demand from the creditor the treatment and protection of a surety for the debt. (Pp. 111 to 115.)

Same—Retiring Partner.

One of two partners retired from the business, the remaining partner agreeing to assume the debts. The retiring partner notified a creditor of the firm to institute suit upon the debt as provided by statute for the protection of sureties, viz.: Rev. Stats. 1895, arts. 3811-3812. The agreement did not constitute him a surety as to the creditor and he was not discharged by failure of the latter to bring suit at the first or second term of court. (Pp. 111 to 115.)

CERTIFIED QUESTION from Court of Civil Appeals for Second District, in an appeal from County Court of Archer County.

*F. E. Dycus,* for appellant A. F. Shapleigh Hardware Co.—The trial court erred in overruling the plaintiff's demurrer to defendants' answer in which defendant Wells claimed to be a surety on the contract between the defendants Wells and Chestnutt and then as to plaintiff. Said answer showed that both defendants were bound as partners for the payment of the debt due plaintiff; that both defendants were parties as principals to the contract and that neither of them could by any subsequent arrangement among themselves made without plaintiff's consent change the relation of said Wells from that of a principal to that of a surety.

The trial court erred in not giving to the jury the first special charge asked by plaintiff instructing them to find for plaintiff. The answer of defendant Wells, as well as the evidence, established the fact that both defendants jointly incurred the debts due plaintiff, and no subsequent arrangement could be made without plaintiff's consent changing the obligation of Wells from that of a principal to that of a surety, so as to give

him the rights of a surety under art. 3660, Rev. Stats. of Texas. One of two partners cannot make himself a surety as to existing debts by any arrangement made between such partners that one of them shall take the assets, make the debt his own, unless this arrangement is assented to by the creditor. Lutturloh v. McIlhenny, 74 Texas, 73; White v. Boon, 71 Texas, 712; Mogelin v. Westhoff, 33 Texas, 789; Finsler v. Prather, 43 Ind., 123; Rawson v. Taylor, 30 Ohio St., 399; Barnes v. Bogers, 34 W. Va., 304; Skinner v. Hitt, 32 Mo. App., 402; Wadham v. Page, 1 Wash. St. Rep., 421; Sheppard v. May, 115 U. S., 510.

*Marberry & Taylor,* for appellee S. B. Wells.—The court did not err in overruling plaintiff's (appellant's) exceptions to the defendant Wells' answer, nor did the court err in refusing the special instructions asked for by the plaintiff (appellant), for the defendant. S. B. Wells, under the facts in this case, was, to all intents and purposes, a surety, and was entitled to have his rights as such adjudicated, and it was the duty of the trial court to submit each issue raised by the pleading in his charge to the jury. When one member of a partnership retires from the firm, and the remaining member agrees with him to pay the firm debts, and these facts are known to the creditors, the member so retiring will be considered in law a surety. Hall v. Johnson, 6 Texas Civ. App., 110; Yeager v. Focke, 6 Texas Civ. App., 549; Colgrove v. Tillman, 67 N. Y., 95; Smith v. Sheldon, 24 Am. Rep., 529; Brandt on Suretyship and Guaranty, sec. 23.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals for the Second Supreme Judicial District has certified to this court the following statement and question:

"Appellant sued appellees upon a debt for merchandise contracted by them while engaged in a mercantile business under the firm name of Wells & Chestnutt. While so indebted the firm was dissolved by mutual consent, Chestnutt purchasing the interest of Wells and assuming the liabilities of the concern. Thereupon Wells notified appellant of this fact, and requested that he be released; and upon this being refused, requested, as claimed by him, that suit be brought against Chestnutt as provided in arts. 3660 and 3661 of Sayles' Statutes, but this was not done.

"The material question in the case, which we deem it proper to certify to your Honors for decision, is this: Can one of two or more principal debtors, by agreement among themselves without the consent of the creditor, so change the character of his liability to such creditor from principal to surety as to make available to him the provisions of the articles above referred to? Or, in other words, did Wells, after notice to Shapleigh Hardware Company of the arrangement whereby Chestnutt was to pay the debt, occupy the relation of surety thereon, so as to entitle him to the remedy and rights provided in the foregoing articles?"

There is some conflict of authority upon the question presented for our

consideration.   We think that the weight of authority and sound reasoning support the proposition that one of two or more principal debtors cannot by agreement with his co-debtor or debtors, without consent of the creditor, so change the character of his liability from principal to surety as to entitle him from the creditor to the treatment and protection of a surety for the debt.   In support of this position we cite the following authorities:   Parsons on Part. (3 Ed.), 428; 1 Lindley on Part., 245; 1 Bates on Part., sec. 533 et seq.; Story on Part., sec. 158; White, Barefoot & Bryant v. Boone, 71 Texas, 712; Shepherd v. May, 115 U. S., 505; Whittier v. Gould, 8 Watts, 485; Rowson v. Taylor, 30 O. St., 389; Wadhams v. Paige, 1 Wash. St. Rep., 420; Skinner v. Hitt, 32 Mo. App., 409; Barnes v. Boyers, 34 W. Va., 404; Swire v. Redman, 1 Q. B. Div. L. R., 536; Hall & Long v. Jones, 56 Ala., 493.

As supporting the contrary doctrine we cite the following: Brandt, Sur. & Guar., sec. 36; Colgrove v. Tallman, 67 N. Y., 90; Smith v. Sheldon, 35 Mich., 49; Campbell v. Floyd, 153 Pa. St., 84; Williams v. Boyd, 74 Ind., 286; Gates v. Hughes, 44 Wis., 332.

In the case of White, Barefoot & Bryant v. Boone, cited above, which involved very much the same state of facts as in the case submitted, Judge Collard said:   "A retiring partner is not discharged from existing liabilities of the copartnership nor for any unexpired lease made before retirement.   The fact that the remaining partners have agreed with him to pay the debts and exonerate him from all liabilities upon a lease or other executory contract would not affect the rights of the lessor.   Such an agreement would be binding between the partners themselves only, unless creditors became parties to the agreement for a consideration."

The opinion in that case, which was approved by the Supreme Court, covers every material point involved in the question certified, and in our judgment established the precedent in our State in accordance with the weight of authority.

· If it were necessary to adduce reasons in support of the position taken upon this question, we could do no better than to quote from the opinion delivered by Judge Stone in the case of Hall & Long v. Jones, before cited, the following language:   "When the goods were consigned by Hall & Long to Hannon, Brown & Jones, and received by them as commission merchants, this constituted a contract binding on each of the partners composing the latter firm to account for the goods or their proceeds. Such liability could not be cancelled by any act of the latter firm alone or by any agreement its different members might make among themselves in which Hall & Long did not concur.   It requires the same mutuality to vary or modify a contract as it does to create it in the first instance.   The modification is only a species of contract."   This doctrine, that a contract when once made cannot be unmade without consent of both parties thereto, is so evidently sound, just, and correct, that no argument is required to sustain it.

The leading cases in America which support the opposite view of this

question are Colgrove v. Tallman and Smith v. Sheldon, both hereinbefore cited. Both of these cases rest upon the authority of Oakely v. Pasheller, 4 Clark & Finn., 207. In the former case Judge Folger, of the Supreme Court of New York, after stating the proposition that an agreement between two partners upon dissolution that one should pay all the debts of the firm constituted the retiring partner surety of the other as between themselves, continues in this language: "When it was made known to Colgrove by Tallman that Barnes & Tallman had gone into the bargain which was thus made between them, Colgrove became bound to Tallman in equity to observe it." Thus he assumes the only proposition in controversy in the case—that is, that the agreement of the partners made between themselves, without consent of the creditor, imposed upon the latter the obligation to protect the rights of Colgrove as a surety for his co-debtor. In support of this assumption he cites the case of Oakely v. Pasheller.

In the case of Smith v. Sheldon, Chief Justice Cooley undertakes to reason to the conclusion that such agreement would have the effect to change the contract without the consent of the creditor. He first lays down the correct rule, that as between themselves the retiring partner became a surety for the other partner. Also another proposition to the effect, that if a contract be made by two or more persons as joint obligors therein, but it does not appear from the face of the writing that one of them is surety for the others, and if it be not known to the obligee in the contract that such is the case, then all the obligors will be regarded as principals in so far as it affects the obligee until the fact of suretyship is made known to him, after which he must observe the rights of the surety in his dealings with the principal in the contract. The learned judge then proceeds to reason that, because under such circumstances the fact of suretyship being made known to the creditor, imposed upon him the obligation to treat the surety as such from the time the information is received, it follows that the principal obligors in a contract may by agreement between themselves change the obligation of one or more from that of principal debtor to that of surety, and upon notice of such agreement to the obligee the same effect will be given as if the suretyship originated in the contract itself. This is evidently unsound reasoning. In the first case stated the contract was made by the party as a surety, but he was deprived of the protection given to a surety by the law because the payee was an innocent holder of it for value without notice of his rights as surety and upon notice being given the character of the creditor as innocent holder ceased, and the terms of the contract became operative and in full effect as to all the parties; while in the case decided by Judge Cooley he gave to the action of the parties this effect, that the original contract was in the first instance on the part of all the debtors made as principals and so accepted by the creditor, but subsequently, by an agreement between the debtors themselves, without consent being given on the part of the creditor, the contract was changed and a new one made between

the debtors by which the creditor is charged with the duty of taking care of the interests of one of the principal debtors as surety. In the former case the effect of notice to the creditor does not change the contract, but removes the legal impediment to enforcing its terms; in the latter, notice to the creditor is given the effect of changing the terms of his contract without his consent and over his protests. The doctrine asserted as to the rights of the surety, who contracted as such, after the suretyship was made known to the holder of the contract, is equitable in itself and consistent with sound legal principles; but the conclusion drawn therefrom, that one who contracts as a joint principal with others may, by agreement with his co-debtors and without consent of the payee in the contract, change his relation to the creditor so as to impose new obligations upon him, is neither just nor sound as a matter of law. It is inconsistent with the fundamental and accepted principles which govern the subject of contracts, which require the agreement of the parties to make or change them. The doctrine announced in Smith v. Sheldon originated in a misunderstanding of the case of Oakely v. Pasheller, decided by the House of Lords, Lord Lyndhurst delivering the opinion. An examination of the case will show that the opinion proceeds upon the assumption that the creditor in that case accepted the agreement as it was made between the parties, receiving into the partnership his son-in-law as a new debtor and converting one of the partners from a principal debtor into that of surety for the new firm. During the argument by the attorneys who were asserting the proposition that Judge Cooley announced in his decision of the case cited above, Lord Lyndhurst said, "Can you cite any authority to the effect that two original principal debtors could by an arrangement among themselves convert one into a surety only for the other principal debtor?" To which the counsel replied, "The letters and accounts and all the circumstances of this case make it quite clear that Sir C. Oakely accepted Reid & Kynaston as principal debtors looking to Sherard's executors as sureties." In the opinion, Lord Lyndhurst does not refer to the question of consent or not, but assumes that Sherard's estate had become surety for the new firm, and the whole tenor of the opinion shows that it was based upon the fact that the agreement made between the partners themselves and the new partner was accepted by the creditor. This is the construction placed upon the opinion by Cockburn, Chief Justice, in Swire v. Redman, before cited.

It is said by the Chief Justice in Swire v. Redman, that there is no English case which holds the doctrine that is contended for by those who claim that the agreement between the partners themselves without the consent of the creditor could change their relations to the latter, and we have found no decisions in the American courts which directly hold to that theory, except those we have herein cited, all of which rest upon the misinterpretation of Oakely v. Pasheller.

We therefore answer that one of two or more principal debtors cannot, by agreement among themselves, without consent of the creditor, so

change the character of his liability to such creditor from principal to surety as to entitle him to the benefits of the provisions of the article of the Revised Statutes referred to. Under the facts stated, Wells did not become the surety of Chestnutt in so far as it affected the rights of the Shapleigh Hardware Company, by the agreement made between the partners without consent of the creditor.

Delivered October 29, 1896.