## DOYLE v. SULLIVAN et al.

(Court of Civil Appeals of Texas. Amarillo. June 22, 1912. Rehearing Denied Oct. 12, 1912.)

1. SUBROGATION (§ 23*)—VENDOR'S LIEN NOTE —PAYMENT.

　　The purchaser of land which was still subject to two vendor's lien notes sold it to a third person on his agreement to discharge the notes, and also to make certain payments to the purchaser. The vendor sent the second note of the series to a bank for collection, and the second purchaser, being unable to discharge it, borrowed money from plaintiff under an agreement that the note should be delivered to plaintiff, who should have the rights of the vendor, and

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes.

paid the money to the bank, which marked the note paid. *Held* that, while as between plaintiff and the second purchaser plaintiff would have had an equitable lien, yet, the bank being a holder only for collection and without power to sell the note, the payment to the bank discharged it, and, the lien securing it being thus destroyed, plaintiff's rights were inferior to those of the original vendor, the purchaser, and other lienholders.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 60–66; Dec. Dig. § 23.*]

2. JUDGMENT (§ 17*)—PROCESS TO SUSTAIN—CROSS-ACTION.

In an action to subject land to plaintiff's lien, where the principal defendant's grantor was made a defendant, and the principal defendant filed a waiver and acceptance of service in the cause, but never appeared, the court was without jurisdiction to dispose of the defendant grantor's cross-action against the principal defendant where that defendant was not again served.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 25–33; Dec. Dig. § 17.*]

3. APPEAL AND ERROR (§ 1175*)—DETERMINATION—REVERSAL.

In an action to subject land to plaintiff's lien, where the trial court erroneously gave plaintiff's lien precedence over those of others and refused to allow the holder of vendor's lien notes to recover his attorney's fees, the cause will be reversed and remanded, instead of reversed and rendered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. § 1175.*]

Appeal from District Court, Deaf Smith County; D. B. Hill, Judge.

Action by C. L. Sullivan and another against Grant Doyle and others. From the judgment, Grant Doyle appeals. Reversed and remanded.

Barcus & North, of San Antonio, for appellant. W. H. Russell and Carl Gilliland, of Hereford, for appellees.

GRAHAM, C. J. This is an appeal from a judgment rendered by the district court of Deaf Smith county, the transcript showing that appellees, C. L. Sullivan and wife, N. I. Sullivan, filed this suit against H. B. McKinley, Louis E. Botts, Grant Doyle, and the First State Bank & Trust Company of Hereford, Tex., seeking to foreclose a vendor's lien note for the sum of $1,368.88 on the E. ½ of section No. 115, block M—7, in Deaf Smith and Castro counties, Tex. In their petition, plaintiffs alleged, in substance, that on April 27, 1908, Louis E. Botts sold said land to Grant Doyle, and as a part of the consideration took Grant Doyle's three notes for the sum of $1,368.88 each, payable in one, two, and three years after date; that thereafter Grant Doyle sold said land to H. B. McKinley, who as a part of the consideration for said land assumed the said notes given by Doyle and Botts, and, in addition, executed to Grant Doyle his note for the sum of $6,137.54, payable January 1, 1910, with interest thereon; that, when the first of the Grant Doyle notes fell due to Botts, it was paid, and, when the second of said notes fell

due, McKinley could not pay same, and at his instance and request plaintiffs paid the same to the First National Bank of Hereford, Tex., who was at that time holding it, and that the bank by mistake marked the note "Paid." Allegation was also made that the First State Bank & Trust Company of Hereford had filed suit against McKinley, and had levied a writ of attachment on the land in question to secure a debt claimed to be due it by said McKinley, and further alleged that Louis E. Botts held the last of said three notes given by Grant Doyle to him, and that Grant Doyle held the note for $6,137.54, given by McKinley, and alleged that by reason of the various claims each of the parties defendant were claiming some interest in the land. Plaintiffs then prayed that their lien be fixed as a prior or joint lien to that held by Louis E. Botts, and that the lien held by the First State Bank & Trust Company of Hereford and the lien held by Grant Doyle be canceled and held for naught, or that the lien of plaintiffs be declared a prior lien to any held by said bank and Doyle, and prayed for a personal judgment against H. B. McKinley and Grant Doyle on the note sued on. The First State Bank & Trust Company of Hereford was duly and legally cited to answer in this case, but filed no answer, and the judgment rendered by the court in no way disposes of it, except that the court found in its judgment that it had levied the attachment on the land described. H. B. McKinley filed a waiver of service on December 9th after the cause had been called for trial, but made no further answer; the waiver of service being dated September 25, 1911, and judgment was rendered against him alone for the amount of plaintiff's debt, principle, and interest. Grant Doyle and Louis E. Botts filed a joint answer, in which Louis E. Botts admitted executing the deed to Grant Doyle for the consideration mentioned in plaintiff's pleadings, that the first note of the series of three was paid, also that the second note was paid, and that Louis E. Botts held the third note given by Grant Doyle, and he prayed for judgment against Grant Doyle and H. B. McKinley for principal, interest, and attorney's fees and for foreclosure of his lien. Grant Doyle in said answer admitted that he had sold the property to H. B. McKinley, and alleged that McKinley had assumed the debt due by him to Botts, and had given him the note for $6,137.54 due January 1, 1910, as part consideration for the sale; that said last note was a lien on the land described; that only $2,000 had been paid thereon, leaving a balance of $4,137.54, together with interest and attorney's fees, and asked for a judgment against McKinley for his debt, and also prayed for judgment against McKinley for any amount that plaintiffs or Louis E. Botts might recover against him. Both Botts and

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Doyle pleaded that the note held and sued on by plaintiffs had been paid and canceled, but prayed, in the alternative, that, if it had not been, the lien securing its payment be held inferior to that held by them, respectively.

The record shows that the cause was tried before the court without a jury, and there were no findings of fact and conclusions of law prepared and filed by the trial court, though a statement of facts accompanies the record, which we copy in full as follows:

"It was agreed that the common source to the property involved, to wit, the E. ½ of section No. 115, in Deaf Smith and Castro counties, Tex., was Louis E. Botts, one of the defendants herein. And it is further agreed that said Louis E. Botts sold said property by warranty deed to defendant Grant Doyle on May 13, 1908, and as part of the purchase price for said land the said Grant Doyle executed his three vendor lien notes, each for the sum of $1,368.88, due in one, two, and three years from April 27, 1908, each bearing 7 per cent. interest per annum, and providing for 10 per cent. additional as attorney's fees if placed in hands of attorneys for collection or collected by suit. It is further agreed that the deed from Louis E. Botts to Grant Doyle describes the notes simply as being three notes for $1,368.88 each, and bearing 7 per cent. interest from April 27, 1908, and due in one, two, and three years from date.

"It is further agreed that the first of the three notes to mature given by Grant Doyle to Louis E. Botts has been paid and discharged, and that the last of said notes to mature has not been paid and is now owned by Louis E. Botts, that there is due on the last note the principal $1,368.88, with interest from April 27, 1910. It is further agreed that on July 2, 1909, Grant Doyle and his wife conveyed the land to defendant H. B. McKinley, and as part of the consideration thereof the said McKinley assumed the last two of the notes to mature given by Grant Doyle to Louis E. Botts for $1,368.88 each, and also executed his, H. B. McKinley's, note, payable to Grant Doyle for the sum of $6,-137.64, which was a regular vendor's lien note bearing 7 per cent. interest from date, and providing for 10 per cent. attorney's fees if not paid when due, and was placed in the hands of attorneys for collection or collected by suit. And no part of said $6,137.64 note has been paid, except $2,000 paid April 11, 1911. It is further agreed that the deed from Grant Doyle to H. B. McKinley describes the Botts notes simply by referring to the deed from Louis E. Botts to Grant Doyle, and as being two notes for $1,368.88 each, dated April 27, 1908, due in two and three years after date, the first of said Botts notes to mature having already been paid to Botts.

"C. L. Sullivan testified for plaintiff as follows: 'I am one of the plaintiffs in this suit. I. N. Sullivan is my wife. About May 1, 1910, I had a conversation with the defendant H. B. McKinley with reference to a vendor's lien note. I first talked with him before 1st of May. It was about the 8th of May when we finished and closed the deal. Mr. Louis E. Botts, nor Grant Doyle, were present at any of the conversations we had with reference to the note. The substance of the conversation was I had a note against Mr. McKinley, rather my wife did, for $1,000 that was due, and I asked McKinley if he could do anything for me. That was about the middle of April. McKinley told me he had the money, or would have it, and said he would like to use it, and told me he wanted me to take up this Louis Botts notes for $1,368.88. At that time I told him I would let him know. In a few days I saw McKinley again, and told him I would take it up, and I did. I took up the note, rather it came into my possession about May 8th or 10th. Mr. McKinley brought me the note. The note marked "Plaintiff Exhibit No. 1" is the note he brought me. I went to McKinley, and he said he would like to have this money, would like for me to take this note, use the money to take up this note, and would give me the note if I would furnish the money, and the next day that note was delivered to me. Q. What did McKinley say to you; and what did you say to him about this note. Give all the conversations? A. The first conversation I went to him, and asked him if he could do anything for my note. That was the note I held against his place here in town, my wife did rather, for $1,000. He said he had some money or would have it, and he could take up this note— that is, my note—but would like to use the money, would like for me to let him have the money to take up this $1,368.88 note of Louis Botts, and he told me when it was due. I told McKinley I would see him in a day or two, and in a few days we met, and I let him have the money to take up that note with, and he said he would bring me the note. The money was furnished to take up the note. The cause of his bringing note to me was to secure me for the money I had furnished him to take the note up with. It was McKinley's agreement that he would bring me the note that I furnished the money to take it up. McKinley told me when I let him have the money that he would bring me the note. The first time he spoke to me he said he wanted the money to pay off the note that he would give it to me. No part of that note has ever been paid by either McKinley or Doyle or any one else. One thousand dollars of money was my wife's, and $368 was my money that paid for the note.'

"The defendants Louis E. Botts and Grant Doyle objected to all the conversations had by witness C. L. Sullivan with defendant H. B. McKinley, because neither of said defend-

ants were present at any time, and any statements made by either Sullivan or McKinley in their absence would not bind these defendants, and the court overruled said objection, and permitted all of said testimony to be introduced in evidence, to which the defendants Louis E. Botts and Grant Doyle then and there excepted.

"In connection with C. L. Sullivan's direct testimony, plaintiffs offered in evidence the note held by plaintiffs, to wit, a note for $1,368.88, executed by Grant Doyle, payable to Louis E. Botts, and being the second of the three notes to mature given by Grant Doyle to Louis E. Botts in payment of the land involved in this suit. Said note was indorsed as having the interest paid to April 27, 1911, and no other indorsements were thereon. On face of the note, it was stamped, 'paid to First National Bank of Hereford, May 7th, 1910.'

"Witness Sullivan cross-examined: 'Mr. McKinley owed my wife a note on his home place in Hereford for $1,000, and in April 1st had a conversation with him about paying the note, and McKinley said he had the money, but wanted to get it from me to take up the Botts note. He took up my $1,000 note in this way: I gave him the $1,000 note and the balance for this note. I do not know where the $1,000 note is. I gave it to McKinley when he gave me this note. I paid the difference in cash. I had the money in my office, did not give a check. I think the difference was $368.80, something like that. I had the most of the money in my pocket. The interest was paid on the $1,000 note up to time I took this Botts note. McKinley gave me a check for said interest. I do not know either Louis E. Botts or Grant Doyle, and neither of them were present while McKinley and I were talking or trading. I did not go to the bank when McKinley paid the Botts note. The Botts note is marked paid May 7, 1910, and it was after that date McKinley brought it to me, think it was the 8th, maybe the 10th of May. I never went to the bank and examined the note before I took it. I took McKinley's word for it. He described it to me. I think I gave him the cash before he went to the bank; in fact, I am sure I did. It was a day or so before he brought me this note after I gave him the cash. My office was in the First National Bank Building. I gave him my money before the note was paid, but did not give him the $1,000 note until he brought me the Botts note. I am not sure that I delivered the $1,000 note to him during May, but think I did; think I delivered it immediately. The $1,000 note was a vendor lien note on the home place of McKinley, here in town. I never signed any release for the note He didn't ask for any release. There were some other notes against the place here in town. I think there were three, and this was the middle one, maybe two ahead of it. It is the old Stinson place where Gallagher now lives.'

"Plaintiffs rested.

"The defendant Louis E. Botts and Grant Doyle introduced the following testimony: It was agreed that neither the defendant Louis E. Botts nor Grant Doyle had any knowledge of the plaintiffs or either of them furnishing the money or any part thereof to the defendant McKinley to pay off the note that plaintiffs have in their possession. It is further agreed that at the time the note was in the First National Bank it was there for collection, only having been sent down by Mr. Botts for that purpose, and that at the time Louis E. Botts was the owner and holder of the note. It was further agreed that Grant Doyle was the owner and holder of the $6,137.64 note given by defendant McKinley in payment of the land, and that there was nothing paid on said note except a credit of $2,000 April 11, 1910.

"J. L. Fuqua testified for defendant Louis E. Botts and Grant Doyle: 'My name is J. L. Fuqua. I was president of the First National Bank of Hereford, Tex., in May, 1910. I have seen the note that plaintiffs are suing on before. It was in the First National Bank for collection. Mr. H. B. McKinley came in the bank and paid the note off by giving us a check on the First National Bank on his, McKinley's, account. It was paid on May 7, 1910, and, when paid, I marked it paid, and delivered the note to Mr. McKinley. Just before that time Mr. McKinley got $11,000 from Missouri, and had it on deposit at our bank.'

"All parties closed."

At the conclusion of the trial the court below rendered the following judgment: "On this day came on to be heard the above entitled and numbered cause, and the plaintiffs C. L. Sullivan and N. I. Sullivan appeared by their attorneys, and announced ready for trial, and the defendant H. B. McKinley, though having signed and filed herein his waiver for the issuance of citation and the service thereof as provided by law, and otherwise failed to appear and answer herein, and made default, and a jury being waived, all matters of fact as well as law were submitted to the court, and the court, after hearing the evidence, is of the opinion that the plaintiffs should have and recover of and from the defendant H. B. McKinley the sum of $1,499.85, the same being the amount loaned said defendant McKinley by plaintiffs with which to pay off the note, as hereinafter described and specified, with interest thereon. It is therefore ordered, adjudged, and decreed by the court that the plaintiffs C. L. Sullivan and N. I. Sullivan do have and recover of and from said defendant H. B. McKinley the said sum of $1,499.85. The defendants Louis E. Botts and Grant Doyle having joined issue with the plaintiffs, all parties announced ready for trial, and, the jury being waived, all matters of fact as well as law were submitted to the court, and the defendant the First State Bank & Trust

Company of Hereford having been duly cited, as required by law, failed to appear and answer herein, but wholly made default, and the court, after hearing the evidence, argument of counsel, and fully understanding the same, finds from the evidence that on the 27th day of April, A. D. 1908, the defendant, Grant Doyle, purchased from Louis E. Botts the land hereinafter described, and executed as part payment therefor his three promissory notes, dated April 27, A. D. 1908, due, respectively, in one, two, and three years from date, each bearing interest at the rate of 7 per cent. per annum from date, interest payable annually; that the said first note to mature has been paid off and discharged; that thereafter the said defendant, Grant Doyle, on the 2d day of July, A. D. 1909, sold and conveyed said land to defendant H. B. McKinley, and as part payment therefor the said McKinley assumed the payment of the said two notes maturing two and three years from date, said notes each amounting to the sum of $1,368.88; and it further appearing to the court that the said third note to mature is now owned and held by the defendant Louis E. Botts, and that no part thereof has been paid except the interest up to and including April 27, 1910, and that said note now, together with principal and interest, amounts to $1,537.45; and it further appearing to the court that thereafter, on May 7, 1910, the plaintiffs, at the instance and request of the defendant H. B. McKinley, advanced and loaned to the said McKinley the amount of $1,368.88 with which to pay off said note maturing two years after date, said note for the amount of $1,368.88, and it further appearing to the court that the said money so loaned was used in paying off said note, with the agreement on the part of said H. B. McKinley that the said plaintiffs should be subrogated to the vendor's lien securing the payment of said notes, and the court is therefore of the opinion that the plaintiffs should be subrogated to said lien as it existed on the 27th day of April, A. D. 1908, and the said lien as it existed on said last-named date should be foreclosed as to the defendants Louis E. Botts, Grant Doyle, the First State Bank & Trust Company of Hereford, and H. B. McKinley, in favor of the plaintiffs and the defendant Louis E. Botts, on the following described tract of land, situated in Deaf Smith and Castro counties, Tex., and being the east one-half (E. ½) of abstract No. 25, certificate No. 1235, Grantee B. S. & F. survey No. 115, in block M—7, containing 330⅓ acres. It is therefore ordered, adjudged, and decreed by the court that said vendor's lien as it existed on said last-named date upon the above-described tract of land be and the same is hereby foreclosed, and the clerk of this court do issue orders of sale, one directed to the sheriff or any constable of Deaf Smith county, commanding him to seize and sell that portion of said above-described tract of land situate in Deaf Smith county, Tex., as under execution, and the proceeds of such sale to be by such officer returned into this court. And the said clerk is hereby ordered to issue out of this court an order of sale, directed to the sheriff or any constable of Castro county, Tex., commanding him to seize and sell that portion of the above-described tract of land situated in Castro county, Tex., as under execution, and the proceeds of such sale to be by said officer returned into this court. It is further ordered, adjudged, and decreed by the court that, after the proceeds of such sales are returned into this court, the clerk of this court shall apply such proceeds as follows: First, to the payment of the amount of $1,537.45 to Louis E. Botts, together with interest thereon from this date, at the rate of 7 per cent. per annum; second, to the payment of all costs of this suit, including fees, expenses, and commissions of the officers selling said land; third, to the payment of the said sum of $1,499.85 to the plaintiffs C. L. Sullivan and N. I. Sullivan, together with interest thereon from this date at the rate of 6 per cent. per annum; fourth, the remainder, if any, shall be by said clerk paid to the defendant H. B. McKinley. And it is further ordered that the said officers place the respective purchasers of said respective portions of said land in possession thereof within 30 days after the day of sale. And said order of sale, when issued, shall have the same force and effect as writs of possession. It is further ordered, adjudged, and decreed that the defendant Grant Doyle take nothing by reason of his cross-action against the defendant H. B. McKinley."

A motion for a new trial was filed and presented by appellee Louis E. Botts and appellant, Grant Doyle, which having been overruled by the court, they, in open court excepted thereto and gave proper notice of appeal. Grant Doyle alone prosecuted his appeal by giving a proper appeal bond. The record shows that joint assignments of error were prepared and filed by Louis E. Botts and Grant Doyle, some of which are jointly urged by them in their joint brief in this court.

As we think no good purpose could result by considering the assignments separately, we shall not do so, though they are sufficient to raise the questions on which we dispose of this appeal.

[1] Under the view we have of the law of this case, as presented by the pleadings and the evidence, we think it clear that, if appellees C. L. Sullivan and wife, N. I. Sullivan, have a lien on the lands, it is subject and inferior to the lien of appellant, as well as the lien of Louis E. Botts and the First State Bank & Trust Company of Hereford.

We are inclined to the opinion that the facts are sufficient as a matter of equity to keep alive a lien on the lands as between Sullivan and wife and McKinley to secure

McKinley's indebtedness to them for the money loaned by them to him with which to take up the note they have sued upon (Faires v. Cockerell et al., 88 Tex. 428, 31 S. W. 190, 639, 28 L. R. A. 528), but as the bank only held the note for collection taken up by appellants, and had no power to sell the same, when the note was paid off at the bank by appellants, the lien formerly securing it was lost as to appellant, Louis E. Botts, and the First State Bank & Trust Company of Hereford, as the record shows clearly that neither of them were in any way parties to nor were either of them bound by the private agreement of the Sullivans and McKinley, under which appellees paid off the note sued on by them. Buster v. Woody, 146 S. W. 689. As a result of the principles of law above announced, the pleadings and proof in the record are amply sufficient to require a judgment in favor of Louis E. Botts against both Grant Doyle and H. B. McKinley for the balance due on his note, including interest and attorney's fees, and also require a judgment in favor of Grant Doyle against H. B. McKinley for the balance due on the $6,137.64 note, executed by McKinley, including interest and attorney's fees.

The record is also amply sufficient to require that the lands in controversy be sold under some one or all the liens declared thereon, provided the attachment process under which the First State Bank of Hereford caused the attachment writ to be levied is regular and valid; and, in the event said attachment process is valid and the respective parties to this suit urge their several legal and equitable rights under the record as it is now before us, the proceeds arising from the sale of the lands should be applied as follows: First, to the payment of the balance due on the note sued on by appellee Louis E. Botts including principal, interest, attorney's fees, and the portion of the cost costs incident to the collection of that portion of the judgment; second, to the payment of the balance due on the note executed and delivered by McKinley to Grant Doyle as a part of the purchase price for said land, including principal, interest, and attorney's fees, and the portion of the costs incident to the collection of that portion of the judgment; third, to the payment of such judgment as the First State Bank & Trust Company of Hereford may recover in the suit out of which the attachment process issued, including its costs; fourth, to the payment of the balance due on the note or indebtedness sued on by appellees C. L. Sullivan and N. I. Sullivan, including principal, interest, and attorney's fees, and the portion of the costs incident to the collection of this portion of the judgment; and, fifth, if any of the proceeds arising from such sale remain, they should be delivered to H. B. McKinley, or his order.

[2] Under the authority of the cases of A. F. Shapleigh Hardware Co. v. Wells et al., 90 Tex. 110, 37 S. W. 411, and Witt v. Amarillo National Bank, 135 S. W. 1108, we are not prepared to hold that appellant Grant Doyle had a legal or equitable right to have the cause continued for the purpose of having McKinley served as a party defendant on his cross-action and as McKinley's waiver and acceptance of service in this cause bears date long before appellant's cross-action was filed in the court below, and McKinley appears to have made no further appearance in the case, we think his waiver not sufficient to warrant appellant in recovering against him on said cross-action, though McKinley's said waiver was sufficient to warrant appellees C. L. Sullivan and wife, N. I. Sullivan, taking their judgment against him.

[3] Because the trial court erred in refusing to allow appellee Louis E. Botts to recover his attorney's fees, and also erred in giving the lien of appellees C. L. Sullivan and wife, N. I. Sullivan, priority over that of Louis E. Botts, and the First State Bank & Trust Company of Hereford, and because we believe that justice so requires, the cause will be reversed and remanded, instead of reversed and rendered, as could be done under the record as between appellees C. L. Sullivan and wife, N. I. Sullivan, and Louis E. Botts, and affirming it in other respects.

The judgment of the trial court will therefore be reversed, and the entire cause will be remanded to the trial court for further proceedings in accordance with this opinion; and it is so ordered.