## Burr v. Boyer.

PRINCIPAL AND SURETY. A surety will be discharged by the neglect of the creditor to have a chattel mortgage recorded, made to him by the debtor to secure the debt, if such neglect occasion a loss of the security; but the creditor is not bound to enforce by action securities which he may have taken from the debtor.

——. It is not enough that the debtor has squandered and disposed of the property: it must appear, that, by reason of the neglect to record the mortgage, the debtor has been enabled to pass and has passed the property to *bona-fide* purchasers.

——: *Extension of time.* In order that the giving of time of payment by the creditor to the principal debtor may operate to release the surety, it must be for a sufficient consideration, and without the surety's consent.

Petition in error to Lancaster District Court.

The action was upon a promissory note made by Mitchell, Hunt, and Boyer, to the plaintiff. Boyer defended, alleging that he was surety on the note for Mitchell, who at its date gave a chattel mortgage to the plaintiff upon sufficient property to secure the debt; that the plaintiff neglected to record the mortgage, and Mitchell had squandered and disposed of the property, whereby the security was lost to the surety. Boyer alleged, as a further defence, that, at the maturity of the note, the plaintiff extended the time of payment to Mitchell, provided he, Mitchell, would pay it with stone delivered in Lincoln. At the trial, a jury was impanelled: whereupon the plaintiff moved for judgment on the pleadings, which was granted.

*Sessions & Hall*, for plaintiff in error.

*C. C. Burr*, in personam.

BURR *v.* BOYER.

No briefs on file.

CROUNSE, J.

Ordering judgment on the pleadings was to adjudge that the facts contained in defendant's answer constituted no defence. Plaintiff's action was brought upon a note signed by Boyer, the plaintiff in error, and two others. The defendant Boyer, after admitting the execution of the note, undertakes to interpose two defences.

The first, in substance, is, that he signed the note as surety for Mitchell, another of the defendants, — a fact well known to the plaintiff; and that, at the time of the making and delivering of the note, Mitchell executed a chattel mortgage to secure the payment of the same. Further, that the plaintiff neglected to have the mortgage filed for record, and did not enforce its collection; and that the mortgagor had squandered and disposed of the mortgaged property, which was ample to have secured the amount of the note, so that the same cannot now be made available in the payment and satisfaction thereof. It is further averred, on information and belief, that Mitchell did not have at the time of instituting this suit, nor has he since had, any property from which to satisfy a judgment for the amount of the note. For these reasons, Boyer claims to be released.

The second is, that Burr, by an agreement with Mitchell, extended the time of payment beyond that fixed in the note; and for that reason, also, he should, in law, be discharged.

As to the first of these: some criticism was made at the argument upon that portion of the answer that avers, that, by neglect to file the mortgage, the mortgaged property was "squandered and disposed of" to the injury of the defendant Boyer.

Burr *v.* Boyer.

It was said that the words " squandered and disposed of " do not necessarily imply that the property was sold, or any interest in it transferred to others; and, if they do, that it must be further alleged that such sales were made, if any, to purchasers in good faith, and ignorant of the existence of the mortgage. I think otherwise.

There can be no mistaking the purpose of the pleader. The destruction, secretion, or other disposition beside selling or transferring it to third parties, could in no way be affected by the record of the mortgage; and it would be an unfair presumption to say, that, when used in the connection this language is, it may have been designed to express any other disposal of the property, such as would be influenced by the law relating to the recording mortgages. Sect. 121 of the Code requires, that, " in the construction of any pleading for the purpose of determining its effects, its allegations shall be liberally construed with a view to substantial justice between the parties." This will not dispense with the averment of any material fact; but where the fact is pleaded, but in an unskilful manner, the pleading should not fall under demurrer. If the allegations are so indefinite or uncertain that the precise meaning is not apparent, the remedy of the other party is an application to the Court to have the pleading in that particular made more definite and certain. *Code,* sect. 125; *Olcutt* v. *Carroll,* 39 *N. Y.,* 436.

And not only should the allegation here be held sufficient to include any sale of the mortgaged property to third persons, but the defendant should not be required to add that such sales were to parties ignorant of the existence of the mortgage. The law has provided what shall be notices to purchasers. When such notice has not been given, the presumption should obtain that such purchases were made without notice.

## BURR v. BOYER.

If that be not the fact, then it devolves on the plaintiff to maintain it. Being satisfied that the defendant has sufficiently well pleaded the fact he has undertaken to plead, I will pass to the inquiry, whether enough facts are contained in the answer to make out a defence. Did the answer show the defendant in a position to urge it, I should hold, with his counsel, that Burr's omission to have the mortgage filed was such negligent treatment of it that Boyer should be released from obligation to the extent of the damage resulting from any sale of the mortgaged property to innocent purchasers. But, in the view I take of the case, I will no more than notice that point, without entering into a discussion of the law bearing thereon. The right of the surety to insist upon a proper and careful treatment of the security given by the principal debtor to the creditor rests upon that other right of the surety to use such security to the extent of its value for his own indemnity.

Upon paying the debt of his principal, he has an undoubted right to be substituted in the place of the creditor as to all securities held by the latter for the debt, and to have the same benefit he would have therein. *Story's Eq. Jur.*, sect. 327. Both the creditor and surety are interested in the preservation of the security, that it may be applied to the purpose for which it is given; and upon both is imposed the exercise of good faith with reference thereto. "If the creditor," says Justice Story (*Eq. Jur.*, sect. 325), "does any act injurious to the surety, or inconsistent with his rights, or if he omits to do any act when required by the surety which his duty enjoins him to do, and the omission prove injurious to the surety, — in all such cases the latter will be discharged; and he may set up such conduct as a defence to any suit brought against him, if not at law, at all events in equity." Chancellor Kent, in *Hayes* v. *Ward* (4 *Johns.*

Burr *v.* Boyer.

*Ch.*, 130), discussing the duty of the creditor in such cases, observes, " The surety, by his very character and relation as surety, has an interest that the security taken from the principal debtor should be dealt with in good faith, and held in trust, not only for the creditor's security, but for the surety's indemnity. The creditor must do no wilful act either to poison it in the first instance, or to destroy or cancel it afterwards." Let the rule, as clearly expressed by these eminent jurists, be applied here.

The security taken by Burr from Mitchell, the principal debtor, was a mortgage of personal property. By statute, where there is no immediate delivery of the property mortgaged, the mortgage shall be absolutely void against the creditors of the mortgagor, and so against subsequent purchasers in good faith, unless the mortgage, or a true copy thereof, shall be filed and recorded as directed by law. *Revised Statutes*, chap. xliii. sect. 73. The chief value, then, of the security taken here, depended on the fact whether the mortgage was filed or not. With the principal debtor so irresponsible in the eye of the creditor, that, for the payment of a hundred and forty-seven dollars in thirty days, he must give two additional names and a chattel mortgage as security, can the creditor be said to have acted fairly in omitting to do the very act that was likely to give any indemnity to the sureties? Had the principal debtor pledged to the creditor his gold watch, and the creditor afterwards allowed the debtor the use of it, and the latter had sold it to an innocent third party, there can be no question but that a surety could avail himself of such wrongful treatment of the pledge by the creditor. *Capel* v. *Butler*, 2 *Sim. & Stu.*, 457 ; *Smith* v. *Turner*, 1 *McCord*, 443 ; *Sumner's Notes to Rees* v. *Berrington*, 2 *Ves.*, 540. Wherein does the case before us differ from the illustration just made ? In the latter case, the wrong consists

### BURR *v.* BOYER.

in doing something, — passing the pledge back to the
debtor: in the former, the wrong arises from the plain-
tiff's omission to do something, — the simple act of filing
and having the mortgage recorded.    And it is just
behind this distinction — between doing something and
omitting to do something — that the plaintiff hopes to
shield himself.    It is true, the books speak of the cred-
itor being " under no obligation to exercise active dili-
gence for the protection of the surety as long as the
surety himself remains inactive ; " and " that, to dis-
charge the surety, the creditor must be guilty of some
wrongful act, as by a release or fraudulent surrender of
the pledge," &c.    *Schroeppel* v. *Shaw*, 3 *N. Y.*, 457 ;
*Story's Eq. Jur.*, sect. 501.    I will not, for the reason I
have stated, undertake a review of the cases in which
this reservation in favor of the creditor is declared ; but,
on examination, it will be found that they will not jus-
tify the use sought to be made of them here.    For the
most part, they are cases involving the question as to
the extent of the obligation resting upon the creditor to
prosecute, and satisfy himself out of the securities before
resorting to the surety.    In these cases it is well held,
that there is no greater obligation on the creditor to incur
the expense and trouble necessarily involved in realizing
any thing on the securities given than there is on the
surety.    The surety undertakes that his principal will
pay the indebtedness at given times.    If the principal
fails, it is his duty to pay the same.    He can, by indemni-
fying the creditor, have the latter prosecute actions upon
the securities, or demand that they be turned over to
himself upon his paying the debt.    But it is one thing
to convert the securities given by the debtor into money
that they may be applied to satisfy the debt of the prin-
cipal debtor, and quite another to preserve such secu-
rities that they may be made so available.    While the

creditor may be relieved from the former, he should be held responsible for the loss of any security arising from his wrongful act, either of omission or commission.

The answer avers that Mitchell alone was indebted to Burr, and that Boyer signed the note as surety; and, at the same time of giving the note, Mitchell executed a chattel mortgage upon seven hundred dollars' worth of property in favor of Burr, which mortgage he delivered to him. There was property sufficient to protect the creditor and sureties. The property was liable at any hour to be disposed of in a way that would render the security worthless. The simplest act on the part of the mortgagee and custodian of the paper could save the surety harmless by reason of his friendly act for the benefit of the plaintiff. Can it be called an act of good faith for the plaintiff to omit so small a matter when of so great consequence to the defendant? Can it be contended that the defendant must have first interested himself in the matter of filing and recording the mortgage? This would have been unusual. The plaintiff, and not the sureties on the note, took the mortgage. The very taking of it carries with it the idea that it was given for a purpose. That purpose should only be effectual by the further act of filing it. Can he who has taken the security stop short, and omit to do that which makes it chiefly valuable, under the excuse that others did not urge him to file it, or furnish the pittance necessary to pay the recorder? Were we considering some fixed and inflexible rule of law, as in case of tender or the like, we might feel constrained to insist upon every formal requisite being complied with; but we are applying a principle based on an equitable foundation, requiring good faith and fair dealing from the several parties interested, having reference to the relation they bear to the transaction. The case of *Capel* v. *Butler*, 2 *Sim. &*

BURR v. BOYER.

*Stu.*, 457, is nearly in point. There one White had agreed to sell to Butler an annuity. To secure the payment of the annuity, various securities were given; and, among others, White executed an assignment of two vessels to one Pruen in trust for that purpose. The payment of the annuity was further secured by the bond of White and the plaintiff as his surety. It was one of the conditions of the bond, that, after the expiration of two years, White should be at liberty, upon certain terms, to repurchase the annuity. The transfer of the vessels was not perfected according to the forms prescribed by the registry acts; and, taking advantage of the omission, White had sold the vessels, and applied the proceeds to his own use. The annuity being in arrear, Butler brought an action upon the bond. Capel, the surety, filed his bill to restrain the action, and claimed the right to repurchase the annuity according to the terms stipulated in the condition of the bond, and to have the value of the vessels deducted from the amount which he would otherwise have been required to pay upon such repurchase. The vice-chancellor was of opinion that the plaintiff, as surety, was entitled to take advantage of the proviso for redemption; and, the value of the vessels being lost to him by the neglect of the defendant Butler, he was entitled to deduct that value from the stipulated price of redemption. It appeared, by the recitals of the bond, that the plaintiff had become surety on the faith of the vessels being effectually assigned as a security for the annuity. I do not regard this circumstance, however, as at all controlling the right of the surety to insist upon having any security taken applied to the payment of the debt; nor does it depend upon the circumstance, that the surety knew at the time that it was taken by the creditor. The rule applies equally to securities taken by the creditor subsequent

## Burr *v.* Boyer.

to the time of the surety becoming bound. *Pledge* v. *Buss, Johnson (English Ch.)*, 663 ; *Story's Eq. Jur., Red. Ed.*, sect. 499.

Mr. Justice Harris, in the case of *Schroeppel* v. *Shaw*, in commenting on that of *Capel* v. *Butler*, says, " For the defendant (creditor) to omit an act necessary to render the assignment effectual was equivalent to a surrender of the security to the principal debtor. It was like the case of a creditor *taking a mortgage upon personal property, and neglecting to file it;* or the omission of a creditor to protest a note held by him as collateral security, so as to charge the indorser. In these and in similar cases, surety, whose means of indemnity had been impaired by the neglect of the creditor to do what was necessary to protect the security, might well insist upon his right to be discharged to the extent of the loss sustained by reason of such neglect." In the same case, when before the New-York Supreme Court, a similar comment was made on *Capel* v. *Butler*. It was there said, " The nature of the security required something to be done at once by the creditor to make it a valid security; and hence the law should, as it doubtless did, imply an agreement on his part to perform that act, without which the security was invalid. An omission to do this would be gross neglect in an agent, bailor, or trustee, and would be a breach of good faith on the part of the creditor towards the surety." 5 *Barb.*, 580. So, without dwelling longer on this point, I am of the opinion, that to omit to file the mortgage on the part of Burr is such a breach of that trust imposed on him by the law to make effectual and to preserve the indemnity upon which the defendant Boyer had a right to rely, as to make him, in the first instance, liable. This brings me to the further consideration, whether there is still enough alleged to constitute a defence.

18

Conceding that Boyer might show what he has averred, that, notwithstanding he appears by the face of the note as one of three joint and several makers, he signed in fact only as surety, his obligation was, that in the event his principal, Mitchell, did not pay the note within thirty days from Oct. 17, 1870, he would. Yet by his answer, filed one year after the making of the note, and about eleven months subsequent to the time he guaranteed it should be paid, he virtually confesses that it has not been so paid. As a legal excuse for such non-payment, he urges, that, by the failure of Burr to file and have the mortgage recorded, the mortgaged property has been " squandered and disposed of by the mortgagor, Mitchell, without the knowledge and consent of him, the said Boyer ; so that the same cannot now be made available in the payment and satisfaction of said note."

From what has been said, it will be understood that any liability which might fall upon the plaintiff in the premises would result from his omission to file the mortgage, rather than from any failure to satisfy his claims out of the mortgaged property. This latter he was not bound to do upon his own motion. *Story, Eq. Jur.,* sect. 501. His duty, in the first instance, was to make effectual the security given, and preserve it to await the maturity of the note. Then the duty of the defendant, Boyer, arose. It was for him then to pay the note, unless the conduct of Burr had destroyed the security on which he was entitled to rely. But, from all that appears here at that time, the property may have been all intact and in possession of Mitchell. It is claimed now, nearly one year after the defendant Boyer's obligation arose, that the property is disposed of. It does not follow, nor is it at all probable, that such was the case at the time when he, under the letter of his contract, should have paid the note. If it is the fact, it was the

BURR v. BOYER.

duty of defendant in the Court below to make it appear. The fair presumption is to the contrary, however. Before the defendant can come into court and invoke the aid of a rule of law grounded in equity, he must not only show that the plaintiff has been guilty of a wrong, but that he himself is free from fault. For this reason, the first defence is insufficient.

As to the second : it is not enough that the creditor shall have agreed with the principal debtor to allow an extension of time for the payment of the debt. Such agreement must be for a sufficient consideration, and without the consent of the surety. The answer is insufficient in alleging want of consent. *Green* v. *Blandon Walker* (*Miss.*), 375 ; 5 *U. S. Dig.*, 821.

The judgment of the Court below must be affirmed.

Judgment affirmed.