### LEASK et al. v. DEW.

(Supreme Court, Appellate Division, First Department. March 24, 1905.)

1. TENDER—ESSENTIALS.

A sufficient tender imports not only readiness and ability to perform, but actual production of the thing to be delivered.

[Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Tender, §§ 29–32.]

2. SAME—WAIVER OF FORMAL REQUISITES.

The formal requisites of a tender may be waived, but, to establish a waiver, there must be an existing capacity to perform.

3. SAME—NOTES—REFUSAL OF PAYEE TO ACCEPT PAYMENT—ESTOPPEL.

Where, on a tender of payment of a note, the payee stated that he did not desire the money, but wished it used for other purposes, it did not estop him to subsequently change his mind and demand payment.

[Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Tender, § 66.]

4. ACTION—INTRODUCTION OF NOTE OF PLAINTIFF IN EVIDENCE—EFFECT.

In an action against the estate of a decedent to recover a sum of money, plaintiff's note to the decedent was admissible in evidence for the purpose of showing an indebtedness to decedent, and as tending to rebut any inference that there was a larger indebtedness in favor of plaintiff.

5. SAME—EFFECT OF INTRODUCING NOTE.

Where, in an action against the estate of a decedent to recover a sum of money, a note of plaintiff to the decedent for a much less sum than that sought to be recovered was introduced in evidence, but it did not appear to have been used as an offset or counterclaim, it was not discharged by any judgment or determination in favor of plaintiff.

6. NOTES—WRITTEN RENUNCIATION BY PAYEE—CONSTRUCTION OF INSTRUMENT —STATUTE.

Negotiable Instrument Law (Laws 1897, p. 744, c. 612) § 203, provides that the holder of a note may expressly renounce his rights as against any party to the instrument, and that an absolute renunciation of his rights against the principal debtor, made at or before the maturity of the instrument, discharges him, but that the renunciation must be in writing, unless the instrument is delivered up to the person primarily liable. Held, that where the payee of a note retained it, and after his death it was found among his papers, inclosed in an envelope, together with a writing signed by the payee, addressed to his executors, and stating, "The enclosed note I wish to be cancelled in case of my death and if the law does not allow it I wish you to notify my heirs that it is my wish and orders," the writing was not a valid renunciation, and the note remained a subsisting obligation.

Appeal from Judgment on Report of Referee.

Action by George Leask and others, as executors of the estate of Oliver W. Buckingham, deceased, against J. Harvie Dew. From a judgment in favor of plaintiffs, defendant appeals. Affirmed.

This action was brought to recover upon a promissory note given by the defendant to the plaintiffs' testator. The note was dated November 23, 1901, whereby the defendant promised to pay to the order of Oliver W. Buckingham, the testator, one year after date, the sum of $5,000, with interest at 6 per cent. Oliver W. Buckingham died testate on the 31st day of October, 1903, and upon the probate of his will the plaintiffs duly qualified as his executors. The answer averred, for separate and affirmative defenses, that the testator had canceled the said note by an instrument in writing, and that after the testator's death this defendant presented a claim against the estate of said deceased for $31,500, which was disputed by the executors; that the matter in controversy was finally submitted ·to a referee, pursuant to the provisions of section 2718 of the Code of Civil Procedure, and upon the trial of said action the defendants therein offered said note in evidence by way of offset or counterclaim against the claim of this defendant, who was plaintiff therein; and that said action was pending and undetermined at the time of the joinder of issue. Upon the trial of this action the plaintiffs proved the making of the note, the nonpayment of which was admitted, except as stated in the answer, and rested. The defendant then offered proof that after testator's death the note in question was found among his papers, inclosed in an envelope together with the following paper, all in the handwriting of the testator, except the signature of the witness:

"New York, Nov. 25, 1901.

"To my executors.

"Gentlemen: The enclosed note I wish to be cancelled in case of my death, and if the law does not allow it I wish you to notify my heirs that it is my wish and orders.

"Truly yours,    Oliver W. Buckingham.

"Witness:

"Frank W. Woglom."

The defendant's wife testified that she was present at a time when the testator and her husband were talking about the note in question, and that her husband said to the testator that he objected to debt, and wished to pay the note, but Mr. Buckingham objected to receiving it, and said that he did not intend to take it, and wished it appropriated by Dr. Dew to fix the house, and he positively refused to take it. The counsel for the defendant asked the plaintiffs to concede that the note in question was offered as an offset upon the trial of the claim of Dew against the executors, whereupon the attorney for the plaintiffs said: "I concede that, prior to the commencement of this suit on the note for $5,000, Dr. Dew, the defendant, presented a claim against the estate of Mr. Buckingham amounting to $31,500, which, pursuant to the provisions of the Code, had been referred to Hon. Henry E. Howland, as referee, and that on the trial of said action before the said referee the executors introduced the same note which forms the subject of this action, and put the same in evidence, but did not assert the same as a counterclaim." The defendant's counsel then said: "I claim that the note could be used in evidence for no other purpose than as an offset or counterclaim." This is substantially all that was shown in regard to introducing the note in evidence as an offset in the other action. Both actions were tried before the same referee, who reported for the plaintiffs in the action at bar, and to his findings of fact and conclusions of law the defendant duly excepted. In the case of Dr. Dew's claim against the estate of Oliver W. Buckingham, the referee rendered a brief opinion, entitled in that case only, which closes as follows: "The note for $5,000, dated November 23, 1901, made to the decedent by the claimant, is ·a valid and outstanding obligation (Dimon v. Keery, 54 App. Div. 318, 66 N. Y. Supp. 817), and the attempted renunciation was ineffectual." The referee wrote no other opinion in this case.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

John M. Scribner, for appellant.

T. S. Ormiston, for respondents.

HATCH, J. The plea of tender is unavailing, as it was not made to appear that any money was produced at the time when the tender was claimed to have been made, or that any formal requisites were observed, sufficient to make a valid tender. It was said in Eddy v. Davis, 116 N. Y. 247, 22 N. E. 362:

"A tender imports not only readiness and ability to perform, but actual production of the thing to be delivered. The formal requisite of a tender may be waived, but to establish a waiver there must be an existing capacity to perform."

The only thing disclosed by the evidence is that the testator did not intend to take the money, and it may be that from such situation, if it had been made to appear that the maker of the note had the ability to perform, it would constitute a waiver of the formal requisites; but there is no evidence to show that he either had the money at the time of the tender ready to pay, or that he had the means of producing it at the time. The tender of payment did not discharge the debt, and the mere expression by the testator that he desired the money to be used for other purposes, and did not intend to take it in discharge of the note, worked no estoppel upon him to subsequently change his mind and demand payment of it. Consequently the tender had no effect upon the note, and it remained a subsisting obligation.

So far as the plea of the discharge of the note by way of counterclaim to the defendant's claim made against the estate of the testator is concerned, it is sufficient to say that it was not used as a counterclaim in that proceeding, but simply as evidence in rebuttal of the defendant's claim. As such, it was competent for the purpose of showing an indebtedness of the defendant to the testator which might—dependent upon circumstances—tend to rebut the inference that there was a large indebtedness in favor of the defendant against the testator, as the former's liability upon the promissory note might be entirely inconsistent with the existence of a large claim in his favor against the testator. But whether it had great or little probative force is not of consequence, as it appears not to have been used as an offset or counterclaim to the defendant's demand, and consequently it was not discharged by any judgment or determination had in that proceeding.

This brings us to the main question in the case—the construction of the written declaration of the testator, which was found in the envelope which contained the note after his death. It is probably true that this declaration was sufficient to discharge defendant's obligation upon the promissory note, within the authority of Wekett v. Raby, 2 Brown's House of Lords Rep. 386. The declaration therein was made a few days before the death of the testator, in these words:

"I have Raby's bond, which I keep; I don't deliver it up, for I may live to want it more than he; but when I die he shall have it, he shall not be asked or troubled for it."

Suit having been brought upon the bond, it was ordered to be delivered up and canceled, and such decision was affirmed by the House of Lords upon appeal. The declaration in the present case is, in one view, stronger than the declaration in that case, for therein there was the express intention of the testator to keep the bond as a subsisting obligation against Raby, and it was not to be enforced save in the event of his death, when it was to take effect. In the writing under consideration in this case there is no such expression in terms. A similar doctrine was announced in Brinckerhoff v. Lawrence, 2 Sandf. Ch. 412. Therein the Raby Case is cited with approval. The declaration therein was, like the present, limited in its operative force to events which might happen subsequently to the death of the declarant. These cases applied the common-law rule, and, while they are authoritative declarations of the effect of this instrument at common law, they are not controlling in its construction at the present time, for the reason that the force and effect of an instrument of renunciation is now governed by the provisions of section 203 of the negotiable instruments law (Laws 1897, p. 744, c. 612). It reads:

"The holder may expressly renounce his rights against any party to the instrument before, at or after its maturity. An absolute and unconditional renunciation of his rights against the principal debtor made at or after the maturity of the instrument, discharges the instrument. But a renunciation does not affect the rights of a holder in due course without notice. A renunciation must be in writing unless the instrument is delivered up to the person primarily liable thereon."

This statute was taken from an act passed by the British Parliament in 1882, known as the "Bills of Exchange Act." It has been quite generally adopted in various states of the American Union. Its provisions are as follows:

"(1) When the holder of a bill at or after its maturity absolutely and unconditionally renounces his rights against the acceptor, the bill is discharged. The renunciation must be in writing, unless the bill is delivered up to the acceptor. (2) The liabilities of any party to a bill may in like manner be renounced by the holder before, at, or after its maturity, but nothing in this section shall affect the rights of a holder in due course without notice of the renunciation."

It is readily seen that these two statutes, in character and import, are alike. The only difference is change in the form of phraseology, but it affects neither the sense nor the construction. A single case has arisen in England under the provisions of this statute. In re George, L. R. 44 Ch. Div. 627, decided in 1890. Therein it appeared that the testator desired to have destroyed a note for £2,000 given by Mrs. Francis. Search was made for the same, that it might be destroyed, but it could not be found. At the instance of the decedent, the nurse in attendance upon him wrote at his dictation: "30th August, 1889. It is by Mr. George's dying wish that the cheque [sic] for £2,000 money lent to Mrs. Francis be destroyed as soon as found." The nurse added to this declaration the words: "Mr. George is perfectly conscious and in his sound mind. [Signed] Nurse T." This transaction took place two or three hours before death. The testator therein left a will, in

which he bequeathed to Mrs. Francis, his niece, the sum of £6,000. The executors of the will declined to pay the bequest in full, and thereupon the legatee brought an action to determine the question as to whether the promissory note had been duly canceled. The court, under the provisions of the statute above quoted, determined that the renunciation was insufficient to discharge the note. Upon the case there presented, I should be disposed to hold that it amounted, within the terms of the act, to an unconditional renunciation of the rights of the testator against the maker of the note. The expression that it was the testator's wish that it be destroyed would seem to constitute an announced declaration to destroy the instrument, and, as such, it was a clear expression of a renunciation of his right to enforce it. In the declaration of renunciation, it is stronger than the instrument relied upon in the present case.

There is some obscurity in the provisions of our statute. In its first sentence it provides for the renunciation of the rights of the holder against any party to the instrument which may be made before, at, or after its maturity. In the second sentence it provides for an absolute and unconditional renunciation of the rights of the holder against the principal debtor at or after the maturity of the instrument, and discharges the instrument. The first relates to the party; the second, to the instrument. It is somewhat difficult to see how there could be an absolute discharge of a party to an instrument without discharging the instrument as an obligation, so far as he is concerned. We do not clearly perceive why this distinction should have been made. It is immaterial, however, to the rights of the parties to the present action. The instrument of renunciation contains no express declaration of the testator to renounce his rights in the note against the party, or of his right to enforce it as a subsisting obligation. The expression is: "I wish [the note] to be canceled in case of my death." There is nothing in these words which can be construed as expressing a renunciation of any rights either against the party or upon the instrument. Had it been delivered to the defendant during the lifetime of the testator, it would not have precluded the latter at any time upon maturity from enforcing the note. There is nothing indicating an intent upon his part not to enforce it during his lifetime. There was no delivery of it to anybody, and while, doubtless, it was sufficiently authenticated to accomplish a renunciation, it had no operative effect whatever, as it did not fall within the statute or comply with its terms.

In principle, the question raised by this case has been decided by this court. Dimon v. Keery, 54 App. Div. 318, 66 N. Y. Supp. 817. Therein the plaintiff's intestate loaned to the defendant a sum of money, taking her promissory note in writing, wherein she agreed to pay the same, with interest, on demand. At the time the note was delivered, the testator indorsed thereon the words: "at my death the above note becomes null and void. Stephen C. Dimon." Dimon continued to retain possession of the note, and the defendant paid interest thereon, but no principal. Dimon died about three years after the execution and delivery of the note. In an action to enforce the same by his administrator, the defendant was held liable thereon, as the indorsement was a

mere declaration by the payee of the note as to his intention concerning it, but that it was insufficient as constituting either a gift of money, or an agreement to discharge it as an obligation. The court therein did not discuss the statute which is here the subject of consideration. It is manifest, however, that the declaration indorsed upon the note was not a renunciation of the liability of the maker during the lifetime of the deceased, or of any renunciation of the obligation of the instrument; and, as it did not constitute a gift or an agreement, it neither fell within the terms of the statute, nor exempted the defendant, for either reason, from liability thereon. In the instrument relied upon in this case, so far as the direction for cancellation in the event of death, and a command to his heirs to obey his wish and follow his orders, the language is no stronger than the indorsement upon the back of the note in the Dimon Case. Nor is it as strong, because the language there used was a declaration that the note at death "becomes null and void." Here there is simply the expression of a wish to have it canceled, and a direction to the heirs to obey the wish. Consequently the Dimon Case becomes a direct and controlling authority in the disposition of this controversy. As there was no valid renunciation of right of the testator to enforce the note against the party, or of renunciation from liability upon the instrument, and as nothing contained in the declaration otherwise operates to relieve the defendant from liability, it follows that the note remains a valid and subsisting obligation.

The judgment enforcing it should therefore be affirmed, with costs. All concur.