NUNN v. SMITH et al.   (No. 1127.)

(Court of Civil Appeals of Texas. Amarillo.
March 14, 1917. Rehearing Denied
April 18, 1917.)

1. PRINCIPAL AND SURETY ⬤⟳173—SUBROGA-
    TION ⬤⟳7(2)—RIGHTS OF SURETY.
    A surety and those secondarily liable for the payment of indebtedness are entitled, upon the payment thereof, to recover against the principal debtor and be subrogated to the rights of the creditor, with respect to any security given for the payment of the indebtedness.
    [Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 497–499; Subrogation, Cent. Dig. § 18.]

2. PRINCIPAL AND SURETY ⬤⟳169—RIGHTS OF
    SURETY—SUBROGATION.
    Since the surety has an interest in the security taken by the creditor, the latter is regarded as trustee, and must exercise good faith toward the surety and do nothing to impair or release the security.
    [Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 474–489.]

3. PRINCIPAL AND SURETY ⬤⟳169—RIGHTS OF
    SURETY—SUBROGATION.
    The duty of a creditor who holds security is not ordinarily a positive duty, and he is not liable for loss resulting from mere passivity.
    [Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 474–489.]

4. PRINCIPAL AND SURETY ⬤⟳115(2) — RE-
    LEASE OF SURETY.
    Where the creditor takes a mortgage to secure the payment of a debt, he owes the surety the duty of having it recorded, and if he does not do so and the security is lost, the surety will be released pro tanto.
    [Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 249–265.]

5. BILLS AND NOTES ⬤⟳301 — LIABILITY OF
    INDORSER—RIGHTS.
    The relation between the indorser and the maker of the note, even after the liability of the indorser is fixed by protest or waiver, is very similar to that of principal and surety, and most acts which will discharge the one will discharge the other.
    [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 706–721.]

6. BILLS AND NOTES ⬤⟳301—LIABILITY OF
    INDORSER—RIGHTS.
    Where a note and mortgage were given and the payee indorsed the note, by such indorsement he impliedly agreed that he was satisfied with the transaction, and the indorsee could accept the security as tendered and rely on the indorsement, and recover thereon, though the mortgage security was impaired through failure to record the mortgage.
    [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 706–721.]

Appeal from District Court, Armstrong County; Hugh L. Umphres, Judge.

Action by G. J. Nunn against Elbert F. Smith and others. Judgment for plaintiff in part, and he appeals. Affirmed in part, and in part reversed and remanded.

S. E. Fish and Kimbrough, Underwood & Jackson, all of Amarillo, for appellant. C. E. Gustavus and Crudgington & Works, all of Amarillo, for appellees.

BOYCE, J. E. F. Smith executed and delivered to Palm Bros. a note, dated November 5, 1912, for $640, payable in one year, and secured by chattel mortgage, also executed by said E. F. Smith, on certain cattle. On November 23d Palm Bros. delivered the note to G. J. Nunn, indorsing it to his order, as part payment for certain land conveyed by Nunn to Palm Bros. At the same time an assignment of the chattel mortgage was written on it, signed by Palm Bros. and the chattel mortgage with the assignment was deliv-

ered to Nunn with the note. The chattel mortgage had not been recorded by Palm Bros., and was not recorded by Nunn until June 7, 1913. In the meantime the cattle had been sold by Smith to Louis Hansen, who was, according to the findings of the jury, an innocent purchaser for value without notice of the mortgage, and the security was thus lost. The value of the cattle covered by the mortgage was shown to be from $1,200 to $1,500, thus being more than the amount due on the note.

Appellant, Nunn, brought suit on the note against Smith, the maker, Palm Bros., as indorsers, and to foreclose the lien of the chattel mortgage, making Louis Hansen a party defendant for that purpose. On the trial the jury found that Hansen had bought the cattle in good faith without notice of the mortgage, and that plaintiff, Nunn, was negligent in not recording the mortgage, and this was the proximate cause of the loss of the security. Judgment was entered in favor of plaintiff against Smith for the amount of the note and foreclosing the lien as to him, but denying recovery against the indorsers, Palm Bros., and foreclosure of the lien as to Hansen, and the plaintiff, Nunn, has appealed from this judgment.

[1-3] The only question on the appeal is as to whether Nunn, by reason of his failure to record the mortgage, thereby released the indorsers. A surety and those secondarily liable for the payment of indebtedness are entitled, upon the payment thereof, to recover against the principal debtor and be subrogated to the rights of the creditor, with respect to any security given for the payment of the indebtedness. The surety therefore has an interest in the security taken to secure the indebtedness, and the creditor is regarded as a trustee, holding the securities for the benefit of all parties interested. He must exercise good faith toward the surety and do nothing to impair or release the security. His duty is not ordinarily a duty of action, so that it is usually said that he is not liable for loss resulting from mere passivity, but must do no affirmative act that will impair or release the security. The subject is treated by Story in his work on Equity Jurisprudence (section 325), under the title of "Constructive Fraud," and the rights of the surety are thus stated:

"If the creditor does any act injurious to the surety or inconsistent with his rights, or if he omits to do any act when required by the surety which his duty enjoins him to do, and the omission proves injurious to the surety, in all such cases the latter will be discharged, and he may set up such conduct as a defense to any suit brought against him if any at law, in all events in equity."

Chancellor Kent, in Hays v. Ward, 4 Johns. Ch. (N. Y.) 130, 8 Am. Dec. 554, states the duty of the creditor in such cases thus:

"The surety, by his very character and relation of surety, has an interest that the mortgage taken from the principal debtor, should be dealt with in good faith, and held in trust, not only for the creditor's security, but for the surety's indemnity. * * * The [creditor] must do no willful act, either to poison it, in the first instance, or to destroy or cancel it afterwards."

Justice Lurton, later of the Supreme Court of the United States, in the case of Evans v. Kister, 92 Fed. 834, 35 C. C. A. 28, says:

"If, therefore, the creditor surrender such securities to the debtor without consent of the surety, or they are lost as a consequence of the failure of the creditor to discharge some duty owing to the surety in respect to their protection or preservation, the surety will be discharged to the extent that he sustains loss by such misconduct."

[4] It is now the generally accepted rule that, where the creditor takes a mortgage to secure the payment of the debt, he owes the surety the duty of having it recorded, and if he does not do so, and the security is lost, the surety will be released pro tanto. Bennett v. Taylor, 43 Tex. Civ. App. 30, 93 S. W. 704; Brandt on Suretyship & Guaranty, § 505; Cyc. vol. 32, p. 222; Burr v. Boyer, 2 Neb. 265; Toomer v. Dickerson, 37 Ga. 428. This rule was not established without considerable dissent on the ground that the failure to record the mortgage was a passive act, and not the positive act of release that was required by the authorities to release the surety. See authorities cited, Cyc. vol. 32, p. 222, and dissenting opinion in the Georgia case, supra. The leading case in the United States on the subject seems to be that of Burr v. Boyer, supra, and it is quoted from quite extensively by Brandt and other authorities discussing this question. We will ourselves quote some of the reasons assigned by the court for its holding. After referring to the registration statutes of Nebraska, requiring the record of the mortgage to make it valid as against subsequent purchasers and creditors without notice, the court proceeds:

"The chief value, then, of the security taken here depended on the fact whether the mortgage was filed or not. With the principal debtor so irresponsible in the eye of the creditor, that for the payment of $147 in 30 days he must give two additional names and a chattel mortgage as security, can the creditor be said to have acted fairly in omitting to do the very act that was likely to give any indemnity to the sureties? * * * The property was liable at any hour to be disposed of in a way that would render the security worthless. The simplest act on the part of the mortgagee and the custodian of the paper could save the surety harmless by reason of his friendly act for the benefit of the plaintiff. Can it be called an act of good faith for the plaintiff to omit so small a matter when of so great consequence to the defendant? Can it be contended that the defendant must have first interested himself in the matter of filing and recording the mortgage. This would have been unusual. The plaintiff, and not the sureties on the note, took the mortgage. The very taking of it carries with it the idea that it was given for a purpose. That purpose should only be effectual by the further act of filing it. Can he who has taken the security stop short of and omit to do that which makes it chiefly valuable under the excuse that others did not urge him to file it, or furnish the pittance necessary to pay the recorder? * * * The nature of the security required

something to be done at once by the creditor to make it a valid security; and hence the law should, as it doubtless did, imply an agreement on his part to perform that act, without which the security was invalid. An omission to do this would be gross neglect in an agent, bailor, or trustee, and would be a breach of good faith on the part of the creditor towards the surety.' Schroeppel v. Shaw, 5 Barb. [N. Y.] 580."

[5] The relation between the indorser and the maker of the note, even after the liability of the indorser is fixed by protest or waiver, is very similar to that of principal and surety, and "most acts which will discharge the one will discharge the other." Brandt on Suretyship & Guaranty, § 3. But do the reasons which require the creditor, in the exercise of good faith toward the surety, to record the mortgage, taken by himself, apply to the record of a mortgage taken by the indorser? In the one case the security is taken and arranged by the creditor himself; the surety had nothing to do with it, is not in possession of the mortgage, and has no power himself to have it recorded, and himself derives no benefit from the transaction. In the other the indorser has himself arranged for and taken the security. He is in the first instance in possession of the mortgage, with the power to have it recorded, and the security is apparently arranged to his satisfaction, without the record of the mortgage. Under these circumstances he sells the note, receiving the consideration therefor, delivers the note and the mortgage in this condition to the indorsee, and by his indorsement binds himself to pay the note immediately upon default in payment by the maker; the indorsee being under no obligation to pursue or exhaust the security before calling on the indorser for payment.

[6] We do not think that under these circumstances any duty would rest on the indorsee to record the mortgage. By his acts the indorser impliedly represents that the security has been arranged to his satisfaction, without the record of the mortgage, and that he is willing to enter into the contract of indorsement with the security in this condition, and we do not believe it is an act of bad faith on the part of the indorsee to fail to record the mortgage, but he may accept the security as tendered and rely on the contract of indorsement. It is recognized by the authorities that:

"A surety who expressly or impliedly consents to the risk of security is not released by resulting loss." Brandt, § 509.

And it seems to us that the indorser who sells and transfers the note with the mortgage in this condition impliedly consents to the risk, and we hold that unless the duty of recording the mortgage is assumed or imposed by some agreement or special facts attending the transfer and delivery of the note and mortgage, the indorsee is under no duty to record it. If appellant, Nunn, assumed the duty of recording the mortgage, of course

his failure to do so would operate as a release (Scott v. Llano County Bank, 99 Tex. 221, 89 S. W. 751); but this assumption of duty cannot be inferred, we think, from the mere acceptance of the note and unrecorded chattel mortgage, and the duty to record the mortgage would not exist unless such facts were shown as would make it inequitable for him to deny that such was his duty, for instance, an express or implied agreement to record the mortgage, and while we do not say that there might not be special facts and circumstances that would otherwise impose the duty, we do not now have any such in mind.

We have thus far treated the case as if no special facts, as above referred to, attended the transfer and delivery of the note and mortgage, and will now consider whether the allegations of the petition or the proof offered on the trial are sufficient to impose the duty of recording the mortgage upon the appellant, Nunn. The indorsers, Palm Bros., allege that they were for some time before indorsement of the note engaged in negotiations for the purchase of a section of land from Nunn, and that prior to the taking of the note and mortgage from Smith Nunn had agreed that, if said note should be executed and secured by mortgage on said cattle, he would accept said note as part payment on said land upon the indorsement of Palm Bros., with the obligation of said Smith, and chattel mortgage lien on said cattle and stock as the primary and original security for the payment of said note, and the said indorsers secondarily liable after the exhaustion of the other security; and they further allege that the note and mortgage were taken from Smith and delivered to Nunn, in pursuance of this arrangement. The testimony offered on the trial was that of one of the Palm Bros., who testified that there had been some discussion between them and Nunn prior to the execution of the note and chattel mortgage about its execution, and that they had intended to turn the note and chattel mortgage over to Nunn immediately after its execution, but that bad weather or something else prevented this from being done; that it was understood that the chattel mortgage should be delivered to Nunn with the note.

[7] We do not think that either the allegations of the petition or the evidence offered are sufficient to show that the duty of recording the mortgage was thereby imposed upon Nunn, and for this reason we will reverse the case. As the court below overruled the demurrer to the answer, in which the foregoing facts were set up, and as the facts attending the transfer of the mortgage may not have been fully developed, we will remand the case for another trial.

[8] The question to be determined on such trial is as to whether it was the duty of the appellant, Nunn, to record the chattel mort-

gage, and if the facts on the trial are sufficient to make this an issue of fact it should be submitted to the jury with appropriate instructions as to the law. If it was Nunn's duty to record the mortgage, and he failed to do so, and loss resulted, the release would follow as a matter of law. Brandt, § 498. And we suggest that it would be more or less confusing to the jury to submit the question as one of negligence.

The judgment will be affirmed as to the defendants Elbert F. Smith and Louis Hansen, and will be reversed and remanded for a trial of the issue of liability of the indorsers, Palm Bros.