## HALL v. WICHITA STATE BANK & TRUST CO. (No. 2160.)*

(Court of Civil Appeals of Texas. Amarillo. June 13, 1923. Rehearing Denied Oct. 3, 1923.)

**1. Bills and notes 52—Maker may be discharged by oral novation agreement.**

Negotiable Instruments Act, § 119, subd. 4 (Vernon's Ann. Civ. St. Supp. 1922, art. 6001—119, subd. 4), providing that a negotiable instrument is discharged by any other act which will discharge a simple contract for the payment of money, authorizes discharge of maker by oral agreement of novation without express release.

**2. Bills and notes 52—Statutory provision for discharge by writing does not limit provisions for implied discharge.**

As respects discharge of maker of note, Negotiable Instruments Act, § 122 (Vernon's Ann. Civ. St. Supp. 1922, art. 6001—119), providing for discharge by express renunciation which must be in writing, does not limit section 119, subd. 4 (article 6001—119, subd. 4), providing for discharge by stated methods other than writing.

**3. Bills and notes 52—Assumption by third persons did not affect payee's rights against maker.**

Where buyers of a business assumed payment of seller's note to a bank, they became the principal obligors as between the parties to the sale, but the seller's relation to the bank was not changed, and the bank had the right to hold both parties, and to continue to treat the seller as the principal obligor.

**4. Principal and surety 115(2)—Mortgagees must record mortgage for protection of original obligor becoming surety on substitution of new debtor.**

Where a chattel mortgage is taken by the obligee to secure the undertaking of substituted obligors, and the original obligor becomes a surety, the obligee owes the surety the duty of having the chattel mortgage recorded to secure the obligation.

On Motion for Rehearing and to Certify.

**5. Appeal and error 308—Case not certified when reviewable on writ of error.**

Where the Supreme Court has jurisdiction of a case on writ of error, under Rev. St. art. 1521, and Laws 1923, c. 56, there is no necessity for certification.

Appeal from Wichita County Court; Guy Rogers, Judge.

Action by J. H. Hall against the Wichita State Bank & Trust Company. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

Fitzgerald & Hatchitt, of Wichita Falls, for appellant.

Cox, Fulton & Myers, of Wichita Falls, for appellee.

BOYCE, J. Appellant, J. H. Hall, brought this suit against the Wichita State Bank & Trust Company to recover an amount alleged to be due him as balance on deposit to his account with the bank. The bank defended on the ground that it had applied the deposit as a credit on a note executed by Hall and payable to it, and by way of cross-action sought to recover a balance still due on the note. To this the plaintiff answered that the note

had been discharged by novation, alleging in support of this plea that A. H. Beals and F. F. Moore, had, upon purchase of plaintiff's interest in a business known as the B. & M. Service, assumed the payment of plaintiff's note to the bank; that the bank, on report of such agreement, "agreed to look to the said Beals and Moore for the payment of said note"; that upon maturity of said note the bank accepted a new note from the said Beals and Moore for the balance due on the old note, taking additional security from the said Beals and Moore, with the intent and understanding that the plaintiff's note was thereby discharged. The bank in turn pleaded that the note of Beals and Moore and the security given therefor was accepted with the distinct understanding that plaintiff should continue liable on his note; that the Beals and Moore note and security given by them were attached to the plaintiff's note as an accommodation to the plaintiff, and for the purpose of assisting him in the collection of his debt against the said Beals and Moore.

The evidence shows that the bank at maturity of plaintiff's note did take the note of Beals and Moore for the amount then due, secured by chattel mortgage on certain property, and that the said Beals and Moore at that time and subsequently made considerable payments thereon; but the bank retained the plaintiff's note, and the evidence is conflicting as to what was said by plaintiff and the bank's officers handling the matter as to the discharge of the plaintiff from further obligation on the original note. The evidence is sufficient, however, to present an issue of fact on the defense of novation unless it be that section 122 of the present Negotiable Instruments Act (Laws 1919, c. 123 [Vernon's Ann. Civ. St. Supp. 1922, art. 6001—122] applies to this character of discharge and requires it to be in writing. The trial court held that the agreement must be in writing to be enforceable, and gave the jury a peremptory instruction in favor of the bank, and the principal question of law in the case is as to whether this construction of the Negotiable Instruments Act is correct.

[1, 2] The Negotiable Instruments Act, as adopted by our Legislature, was subdivided into articles dealing with various phases of the law. Section 122 is found under article 8, entitled, "Discharge of Negotiable Instruments." We quote sections 119 and 122 of the act:

"Sec. 119. *What Constitutes Discharge.—* A negotiable instrument is discharged:
"1. By payment in due course by or on behalf of the principal debtor;
"2. By payment in due course by the party accommodated," etc.
"3. By the intentional cancellation thereof by the holder;
"4. By any other act which will discharge a simple contract for the payment of money;
"5. When the principal debtor becomes the holder of the instrument at or after maturity in his own right."

"Sec. 122. *Renunciation of Rights by Holder.—* The holder may expressly renounce his rights against any party to the instrument, before, at or after its maturity. An absolute and unconditional renunciation of his rights against the principal debtor made at or after the maturity of the instrument discharges the instrument. But a renunciation does not affect the rights of a holder in due course without notice. A renunciation must be in writing, unless the instrument is delivered up to the person primarily liable thereon."

In the case of Baldwin v. Daly, 41 Wash. 416, 83 Pac. 724, a surety paid part of a note executed by him on verbal agreement that he should be released from further obligation. It was held that the agreement was supported by sufficient consideration, but that the transaction came within the terms of section 122 of the Negotiable Instruments Act; that the word "renunciation" was used in the law in the sense of "release," and was applicable to the character of discharge claimed in the case. This case is followed in the same state by the later case of Pitt v. Little, 58 Wash. 355, 108 Pac. 941. A similar question came before the Maryland Court of Appeals in the case of Whitcomb v. National Exchange Bank, 123 Md. 612, 91 Atl. 689. The conclusion of the court in that case is thus stated:

"Assuming that the transaction described by the defendant, and upon which he relies, would furnish a sufficient basis for an accord and satisfaction with respect to his liability as an indorser, we are of the opinion that under the plain and comprehensive language of the act the only mode of proving the alleged release is by a renunciation in writing. Undoubtedly the word 'renunciation,' as used in the section quoted, appropriately describes the act of surrendering a right or claim without recompense, but it can be applied with equal propriety to the relinquishment of a demand upon an agreement supported by a consideration."

It was assumed, though the holding was not necessary to a decision of the case by the Supreme Court of Washington in the case of Ginnett v. Greene, 87 Wash. 40, 151 Pac. 99, that a discharge by novation would come within this provision of the Negotiable Instruments Law. The Kansas City Court of Appeals expressly held, in the case of Engle v. Brown, 202 Mo. App. 345, 216 S. W. 541, that discharge by novation does fall within this section of the law.

The effect of these decisions is to apply this section of the Negotiable Instruments Law to every character of case in which an agreement or intention to release the obligor is an element of the discharge. We are not satisfied that this is the meaning of the law. It is to be noted that it provides that the holder "may expressly renounce his rights." This language suggests an intention to deal

with some particular character of discharge. Such investigation, limited by the time at our disposal and the facilities at hand for making it, as we have made of the condition of the law at the time of the adoption of the Bills of Exchange Act by the British Parliament in 1882, which furnishes the model for the Negotiable Instruments Law of the various states of the United States, has confirmed this suggestion. There were at common law certain recognized methods of discharging an obligor from a unilateral obligation; these were express release, accord and satisfaction, novation, etc. The term "release" as used in this connection had a technical meaning. This will appear from reference to almost any text-book on contracts. We quote the following from Chitty's Contracts, 6 Am. Ed. pp. 775–777, under the subhead "Form and Effect of Express Release":

"The release of a debt, without payment may occur either by express act of the creditor or by operation of law. The general rule is that a release should be under seal. If under seal no consideration is necessary; if not, the instrument is inoperative for want of consideration although the debtor pay part of the debt and the creditor give a receipt expressing that such money is received in full of all demands. * * * No particular form of words is necessary to constitute a valid release. Any words which evince an evident intention to renounce the claim or discharge the debtor, are sufficient."

Elliott, in his work on Contracts, in defining release and distinguishing it from other methods of discharging contracts, in section 2056 says:

"The term as here used applies to the discharge of the claim or right of action arising from a breach of contract by the formal consent or dispensation of the promisee. It does not, strictly speaking, apply to the discharge of a contract before breach by the agreement of the parties to that effect, which is more correctly described as a rescission of the contract, or discharge by new or substituted agreement."

Williston says of the "nature and effect of release":

"A release, as the word is used technically in speaking of executory contracts, is a discharge under seal of an existing obligation or right of action. * * * The word 'release' is frequently used even by lawyers in an untechnical sense as including discharge from liability by any method. But to avoid ambiguity the word 'discharge' should be used for this broad meaning and the word 'release' reserved for its narrow and technical sense. This is important because many transactions—for example, covenants not to sue—which operate as a discharge do so because law or equity, with or without a suit for that purpose, in effect specifically enforces a promissory agreement while a release is a direct and immediate destruction of the claim released." Williston on Contracts, § 1820.

Daniel, in his work on Negotiable Instruments, § 1287, states the several methods of discharge of negotiable instruments by agreement to be: (1) By accord and satisfaction; (2) by release; (3) by covenant not to sue; (4) by novation; (5 and 6) by agreement for and taking other or higher security in lieu of the bill or note. Of discharge by release he says:

"A release is technically an instrument under seal, the seal importing a consideration. * * * If there is not a technical release under seal, which as has been said imports a consideration, no agreement can operate as a release unless it is upon a sufficient consideration." Section 1290.

See, also, 8 C. J. p. 611, § 848.

However, in England, before the adoption of the Bills of Exchange Act, a verbal release, without consideration, was effective to discharge a negotiable instrument. Williston quotes the following from a leading English case, Foster v. Dawber, 6 Ex. 839, 851, as sustaining this proposition:

"No person is liable on a bill of exchange, except through the law merchant; and probably, the law merchant being introduced into this country and differing very much from the simplicity of the common law, at the same time was introduced that rule quoted from Pailliet as prevailing in foreign countries, that there may be a release and discharge from a debt by express words, though unaccompanied by satisfaction or by any solemn instrument. Such appears to be the law of France, and probably it was for the reason above stated that it has been adopted here with respect to bills of exchange. * * * Promissory notes are put on the same footing as bills of exchange by the statute of Anne and therefore we think the same law applies to both instruments." Williston on Contracts, § 1832.

The author continues:

"It is evident from this statement that in this class of cases the English law borrowed from the French law a rule which is applicable in that law to negotiable instruments but is not in any sense peculiar to them, applying, as it does, to all obligations. Since the English requirement of consideration is unknown to the civil law, any obligation may be gratuitously discharged in countries whose law is derived from that source."

See, also, 8 C. J. p. 615, note 62a. A provision similar to that of section 122 of our Negotiable Instruments Law is contained in the Bills of Exchange Act of England. Williston on Contracts, § 1832; Leask v. Dew, 102 App. Div. 529, 92 N. Y. Supp. 891. Mr. Williston says of this provision in the Bills of Exchange Act:

"The requirement of a writing effected a change in the English law. It was adopted from the Scotch."

In 8 C. J. p. 615, we find the following comment on the effect of this provision of the law in England:

"Except as to the clause requiring the renunciation to be in writing this is but an enactment of the common-law rule."

We do not have access to the English authorities cited to sustain this proposition, and therefore cannot verify it. A Canadian judge, in discussing a collateral question, in the case of Northern Crown Bank v. International Electric Co., 24 Ont. Law Rep. 57, Ann. Cas. 1912a, 474, says that the word "renunciation" as used in the Bills of Exchange Act of England means "the discharge of the bill by accord without satisfaction." Mr. Williston says of the American law (section 1833, Williston on Contracts):

"The English doctrine stated in the preceding section (that is, that a verbal release without consideration was effective to discharge a negotiable instrument) was never adopted by the American courts, and it was uniformly held that consideration was necessary to make effective an agreement to discharge a party to a negotiable instrument. The case was not distinguished from ordinary unilateral obligations. The draftsman of the American Negotiable Instruments Law, however, copied the provisions of the English Act, and, as this law has been enacted almost universally throughout the United States, a written renunciation or discharge of a bill or note or of the liability of any party thereon is now good without consideration."

In a note under the last-quoted section the author says:

"In Baldwin v. Daley, 83 Pac. 724 (heretofore cited by us), it was held that under the Negotiable Instruments Law an oral discharge, supported by consideration, was ineffectual, the court regarding the statute as requiring every discharge to be in writing. But this is clearly unsound."

We are inclined to agree with this conclusion. From what has been said it seems apparent to us that it was the intention of the lawmakers by section 122 to deal with the formal and express release of the common law, and by the provisions of section 119, par. 4, to continue in effect other recognized methods of discharging obligations of this character. An express release is not necessary to a discharge by novation. The intention or agreement to accept the new obligation in lieu and discharge of the old may be implied. Meador v. Rudolph (Tex. Civ. App.) 218 S. W. 520; 29 Cyc. 1132; 20 R. C. L. p. 372; Michigan Stove Co. v. Walker, 150 Iowa, 363, 130 N. W. 130, Ann. Cas. 1912D, 505, and note. So we are of the opinion that section 122 of the Negotiable Instruments Act, which deals with express renunciation, is not applicable to this character of discharge. We do not find that the question has been directly passed on except in the cases already referred to. In a recent decision of this court, Darby v. Farmers' State Bank of Burkburnett (Tex. Civ. App.) 253 S. W. 341, not yet [officially] reported, and in Dies v. Wilson County Bank, 129 Tenn. 89, 165 S. W. 248, Ann. Cas. 1915A, 1090, it was assumed that discharge by novation might be established notwithstanding there was no written agreement for release and no delivery to the obligor of the discharged note, though the Negotiable Instruments Law was in force in both cases at the time of the transaction under investigation. Perhaps other cases of this character might be found. It is true that the question was not raised in these cases, and they are authority only in a negative way, showing merely that it did not occur to the lawyers and judges trying and deciding the cases that section 122 of the Negotiable Instruments Law might be applicable to such a case.

[3, 4] The bank did not record the chattel mortgage which it took from Beals and Moore, and the appellant contended that by reason thereof the security was lost, and a question is presented as to the effect of this loss of security on the rights of the parties. The duty of the bank with reference to the recording of the chattel mortgage depends largely on a decision as to the relation of the parties, as to which the evidence is conflicting. As between Beals and Moore and the appellant, Hall, Beals and Moore were the principal obligors. But this agreement among themselves did not change the relation of the appellant to the bank. Shapleigh Hardware Co. v. Wells, 90 Tex. 110, 37 S. W. 411, 59 Am. St. Rep. 783. The bank had the right to hold both parties to the payment of the debt and to continue to treat Hall as a principal obligor and hold the agreement of Beals and Moore as a "collateral obligation." Newby v. Harbison (Tex. Civ. App.) 185 S. W. 645; Wilson v. Crowdus Drug Co. (Tex. Com. App.) 222 S. W. 223; Watson v. First State Bank (Tex. Com. App.) 237 S. W. 1106; Jones on Mortgages (6th Ed.) §§ 742, 742a. If the creditor may accept the party assuming payment of the indebtedness as the principal obligor. and so make the principal obligor a surety, it is not entirely clear under the authorities just what is necessary to show such an acceptance. The Commission of Appeals said in the case of Wilson v. Crowdus Drug Co., supra, that—

"Where an assumption has been accepted by the payee, the assumptor becomes the principal and the original debtor is surety as to the creditor, unless otherwise specially contracted by the parties."

We doubt whether the statement thus broadly made is correct. See statement of Supreme Court copied in the opinion of the Commission of Appeals in this same case and the opinion of Chief Justice Huff in the same case in the Court of Civil Appeals, 190 S. W. 196. Of course, if it should be shown that the bank accepted Beals and Moore as the principal obligors, and Hall only as a surety, then it owed Hall a duty in the matter of the preservation of the security by having the chattel mortgage recorded. Nunn v. Smith (Tex. Civ. App.) 194 S. W. 406. Even if the bank were acting as the gratuitous agent of Hall in taking the mortgage from Beals and Moore it might be liable for such damage as was the result of inexcusable neglect or gross negligence in such matter. 2 C. J. 722; Mechem on Agency (2d Ed.) § 1281.

Reversed and remanded.

On Motion for Rehearing and to Certify.

The appellee, in its motion for rehearing, contends that our discussion of the condition of the law merchant, prior to the adoption of the Negotiable Instruments Law, in this state, is pointless, and does not justify our holding "a plain statute void." The writer regrets his inability to make clear the meaning of the court. We did not intend to hold any statute void. We were trying to ascertain its meaning. Subdivision 4 of section 119 of the Negotiable Instruments Act is broad enough in its general terms to permit a discharge by novation, though there be no writing expressing the agreement of the parties, since novation was a recognized method of discharging a simple contract for the payment of money. The question then was whether this method of discharge provided by this subdivision of section 119 was limited by the provisions of section 122, which provided for the discharge by express renunciation. It was by no means plain to us that section 122 applied to release by novation, which character of release might be implied, and need not be by express language, as we pointed out in our former opinion. In case of doubt as to the meaning of a statute it is always permissible to examine into the history and condition of the law as it existed prior to the enactment of the statute. The language of section 122 suggested that the lawmakers were dealing with a particular character of discharge, distinct entirely from other recognized methods of discharge, such as novation. For this reason we thought the examination we made as to the prior law was necessary. It confirmed the impression which the mere reading of the statute suggests, and convinced us that this provision of the law was intended to apply to a technical express release or renunciation—another and distinct recognized means of discharging a note. We therefore adhere to our former conclusion.

[5] On the motion to certify we will say that under present provisions of the statute the Supreme Court appears to have jurisdiction of this case on writ of error, and no necessity for certification exists. Laws 1923, p. 110, and article 1521, R. S.